## Cleavinger *against* Reimar.

The vendor of land, who has sold his claim or title merely, which, whether it be bad or good, the vendee agreed to take at his own risk, is a competent witness for the vendee in an ejectment by him to recover possession of the land upon such title, though part of the purchase money remains unpaid.

A warrant taken for land in August 1776, in the name of R. M., whereon a survey was made in 1787; a settlement made on it in 1825 by the lessee of H. G. & H. W. claiming to be the owners of the warrant and land, which was assessed with county taxes from 1805 till 1817 inclusive, and sold by the commissioners of the county on account of the taxes not being paid, in 1820, at which sale the commissioners bought the land and sold it again in 1830, and after passing through the hands of three persons, the land was purchased and redeemed in 1831 by the lessors of the tenant, who was still residing thereon, cannot be considered as abandoned.

Such warrant would seem to be good and rendered available by the Acts of Assembly of the 9th April 1781 and the 5th April 1782, notwithstanding it was granted by the Penns, former proprietaries of the State, as a province, after the 4th July 1776, when it ceased to belong to the Penns, and became an independent State.

If A., believing himself to be the owner of land under a warrant and survey, which happen to be void, leases it for a term of years to a tenant, who according to the terms of his lease erects a dwelling-house and makes other improvements, and resides with his family thereon until the expiration of the lease, when he obtains a warrant for the land in his own name, founded on his personal residence while he was a lessee to A., the latter will be entitled to the benefit of such improvement.

Where an agreement in writing, without date, altogether executory in its terms, contains, among other things, a stipulation that a certain sum of money shall be paid on the 1st of May 1838, the necessary inference is, that it was made before that day; and the agreement being in writing, it is not error in the court to draw this inference and to instruct the jury accordingly.

An attorney employed to support the title of a defendant in an ejectment against that of the plaintiff, will not be permitted during the pendency of the action, or after judgment rendered in it against his client, but before the latter is turned out of possession under the judgment, to purchase the title of the plaintiff; and if he does, his client or the assignee of his client, may claim the benefit of it in a second

· [Cleavinger v. Reimar.] ·

action of ejectment brought by the latter to recover back the possession of the land from the vendee of the attorney; provided he pays or tenders before instituting his action, the amount of the money to the vendee of the attorney, which the attorney paid and was bound to pay for the title so purchased by him.

ERROR to the Common Pleas of *Somerset* county.

This was an ejectment for 300 acres of land, situate in the townships of Milford and Turkeyfoot, warranted and patented in the name of Peter Henry, Jun., adjoining lands of Peter Henry, Peter Gary, John Brook, William Smith, and Samuel Tucker. Samuel Reimar, the defendant in error and plaintiff below, claimed the land under a warrant, dated the 9th of July 1832, granted to Peter Henry for 300 acres; a survey made in pursuance thereof, on the 25th of July 1832, containing 300 acres, and an allowance of six per cent. for roads, &c.; a patent, reciting the warrant and survey, bearing date the 31st of January 1833, to Peter Henry; and a deed of conveyance from Peter Henry and wife, dated the 1st of November 1838, to him, (Reimar), for the consideration of $1200, therein mentioned.

The plaintiffs in error and defendants below, Paul Cleavinger and William Henry, to show that the plaintiff had no available title to recover the land, gave in evidence a warrant to Reese Meredith, dated the 23d of August 1776, for 300 acres, on the west side of the north fork of Turkeyfoot, granted by John Penn, Jun. and Juliana Penn, late proprietors of the Province of Pennsylvania, in consideration of £5 sterling per 100 acres, to be paid immediately by the warrantee to the receiver-general of the land office; also a survey, made and returned in pursuance thereof, embracing the land in dispute, by Alexander M'Lean, deputy-surveyor, on the 15th of May 1787; also an improving lease of the same, dated the 5th of March 1825, by Henry Clymer and Henry Woods, who claimed the land under the Meredith warrant, by their attorney in fact, J. Y. Barclay, to Peter Henry, the warrantee, under whom the plaintiff claimed. The triennial assessments from the commissioners' office of the county were also given in evidence, showing that the land had been assessed, in the name of Reese Meredith, with county taxes, from the year 1805 to that of 1817, inclusive; and also with road taxes for the years 1811 and 1813. It also appeared that the land, for the taxes thus assessed, they being unpaid, was sold by the treasurer of the county to the commissioners thereof, and a deed of conveyance made to the latter by the former, duly acknowledged on the 26th of July 1820. That the commissioners of the county, on the 27th of December 1830, by their deed of that date, sold and conveyed the land to a Joseph Crichfield; who, by his deed of assignment, dated the 5th of January 1831, endorsed on the back of the deed to himself, transferred the land to Jacob Chorpenning; who, by his deed, endorsed in like manner on the deed to Crichfield, dated the 26th of February 1831, assigned the

land to Charles Ogle; who, by his deed, dated the 23d of March 1831, assigned the same to John Y. Barclay, who had acted previously, in leasing the land, as attorney of Henry Clymer and Henry Woods.

To repel this evidence, the plaintiff gave in evidence a decision of the board of property, on the 11th of June 1832, declaring the warrant in the name of Reese Meredith, and the survey thereon void, because granted and made without authority, and that therefore no patent should issue on the same. Also a judgment of recovery in the Common Pleas of Somerset county, on the 6th of December 1837, in an ejectment brought by the devisees, respectively, of Henry Clymer and Henry Woods, both then deceased, for the land, against Peter Henry, their lessee, who had, as mentioned above, obtained a warrant and patent in his own right and name for the land; that on this judgment a writ of *habere facias possessionem* was issued to April term 1838, but returned "stayed;" that subsequently, an *alias habere facias possessionem* was issued to April term 1839, by virtue of which, the possession of the land was delivered to the plaintiffs therein; also an agreement by Joshua F. Cox, who was or had been attorney-at-law and counsel for Peter Henry in the ejectment; wherein the judgment of recovery was had against him for the purchase of the land from Mary Clymer, the devisee of Henry Clymer, and the executors of Henry Woods, to whom he devised his interest in the land. This agreement was as follows: $600 to parties, and $30 to Barclay, 1st May 1839; $75 to Ogle—$75 to Forward, 1st April 1840.

*Warrant in the name of Reese Meredith, in Milford township.*

" If Mary Clymer and Henry Wood's representatives agree to it, the above-mentioned land is to be conveyed to Joshua F. Cox and his heirs, with special warranty only. Cox is to give his notes for $630, payable 1st May 1838; and to C. Ogle and C. Forward, $75 each, on the 1st April 1840.

                    J. F. Cox,
                    C. Ogle, attorney for Clymer and Woods,
                    C. Forward, attorney for Clymer and Woods."

Also a deed of conveyance from Mary Clymer, for an undivided two-third parts of the land, to J. F. Cox, dated the 15th of February 1839.

Peter Henry, the warrantee, produced as a witness by the plaintiff, stated first, upon his *voire dire,* that he had no interest in this suit; that he had not received all the purchase money; that $185 of it would not become payable until the 1st of May then next following. That the bargain between him and the plaintiff was, that the latter was to take the title at his own risk; that witness did not warrant against any but his own heirs. The witness being then sworn in chief, testified that J. F. Cox told

[Cleavinger v. Reimar.]

him his right would hold the land. That being in town, and calling at Mr Cox's office, Mr Cox asked him whether he was about to go on with this suit; that witness replied he was not able. Mr Cox then said witness's right would hold the land; that this was after the ejectment was tried; could not tell how long after, but it was before he was turned out of possession, and before he sold his right to the plaintiff. It was some time in June (1838), as near as he could recollect. Mr Cox was his attorney, and attended to the suit. Witness gave him his title papers, which he kept in his possession for something like two years. Witness moved first on the land on the last day of February 1825, under an agreement previously made with John Y. Barclay, as the attorney of Henry Clymer and Henry Woods, for an improving lease for a term of seven years, to commence on the 1st of April 1825; which lease was drawn up by Mr Barclay afterwards at his residence, in an adjoining county, (to which place the witness went, for the purpose of soliciting and obtaining the lease), and forwarded by Mr Barclay, as agreed on, to Mr Ogle, at Somerset, where witness signed it in May following. Witness, after the judgment of recovery had against him in the ejectment, did not think his title to the land bad, but told Mr Cox he was unable to go on with the contest then, for want of money. A third person wanted to buy part of the land of him, for which he was to furnish the money to carry on the suit, and leave the rest of the land for witness; but witness did not communicate this to Mr Cox.

After proving a notice given to the defendants, to produce on the trial of the cause the agreement between Mr Cox and the defendant, William Henry, for the sale of the land, which was not produced, the plaintiff gave in evidence by a witness, that he saw an article of agreement between Mr Cox and William Henry for the sale and purchase of the land, or a deed, but thought it was an article, in which the price was stated to be $1600 or $1800, payable by instalments of $400 each annually; or that William Henry told him he had paid $400 on the property, and he could not say which it was; nor could he recollect the date of the article, or deed, that he saw; but saw it some three or four months before the trial. Another witness testified, on behalf of the plaintiff, that William Henry told him that he knew, at the time of making the agreement between Cox and him for the purchase of the land, that Cox had been the attorney of Peter Henry in the ejectment against the latter for the land. And Peter Henry testified that William Henry was a witness for him in the ejectment by Mary Clymer and the executors of Henry Woods, and as such, was present at the trial of the cause. In the course of the trial, the defendants objected to the agreement between Cox and the attorneys of Clymer and Woods being given in evidence; as also the deed of conveyance from Mary Clymer to J. F. Cox, which

[Cleavinger v. Reimar.]

was offered in connection with the testimony of Peter Henry, as stated above. The court overruled the objection, and admitted the evidence; which opinion was excepted to, and made the ground of the first error.

The competency of Peter Henry, as a witness for the plaintiff, was also objected to; but the court admitted him, and the defendants excepted. This formed the second error.

The other errors assigned, consisted of exceptions to the charge of the court to the jury, each of which was stated and answered in the opinion of the court.

*Hampton* and *Beaver,* for plaintiff in error, cited 1 *Serg. & Rawle* 42; *Ibid.* 438; 5 *Serg. & Rawle* 204; 9 *Ibid.* 161.

*Black,* for defendant in error, cited 2 *Binn.* 108, 168; 10 *Serg. & Rawle* 84.

The opinion of the Court was delivered by

KENNEDY, J.—The *first* error cannot be sustained. The evidence objected to was clearly admissible, because it was pertinent to the issue, as will be shown in the sequel.

Neither does the *second* error appear to be sustainable. The only evidence offered, or given to the court to prove the interest and incompetency of Peter Henry, on that account, in the cause or the event of it, was his own testimony given on his *voire dire* at the instance of the defendants. But, according to it, he sold and conveyed nothing to the plaintiff, Reimar, but his claim to the land; such as it was, bad or good, Reimar agreed to take it, and pay the price stipulated between them for it, at his own risk. If so, it would seem that he had no interest in the cause or the result of it, which could render him incompetent to testify on behalf of the plaintiff.

The *third* error is an exception to the charge of the court, in which, among other things, they instructed the jury, that for a period of 55 years, from 1776 to 1831, nothing had been done on the warrant of Reese Meredith, to perfect the title under it; that the owner of it must therefore be considered as having abandoned it, and the survey made in pursuance of it; that no title vested by virtue of it, either in John Y. Barclay, or in the representatives of Clymer and Woods, by the assignment of the treasurer's deed to Mr Barclay; that the board were right in declaring the warrant and survey void, though not for the reason assigned in their decision; which was, that the warrant was granted by the Penns after the 4th of July 1776, when Pennsylvania ceased to be a province of Great Britain, and they to be the proprietaries of it. In this instruction, we think the court below were mistaken; for although but little was done, during the period mentioned, towards completion of the title to the land under the warrant,

[Cleavinger v. Reimar.]

yet something was done; for instance, the survey was made by a regular deputy-surveyor of the State in May 1787. But suppose nothing had been done towards completing the title under the warrant, yet other things were done, just as effectual to prevent an abandonment of either the title or land from taking place, as the completion of the title would have been; such, for instance, as taking possession of the land by leasing it and improving it, or causing it to be improved, by building houses thereon suitable for habitation, clearing, fencing, and cultivating it as a farm, and at the same time residing upon it with a family, making it the place of abode and the means of supporting such family. The warrant in the name of Reese Meredith, and the land surveyed under it, were claimed by Henry Clymer and Henry Woods, at least as early as 1825. Upon what ground they claimed the warrant and land, does not appear; nor is it material in this case, seeing no other person appears ever to have had any claim to the warrant. In the beginning of 1825, they, by their attorney, John Y. Barclay, leased the land to Peter Henry for a term of seven years, who, in pursuance thereof, entered upon it, and resided thereon with his family, building upon and improving it, according to the terms of his lease, during the whole of the term, and afterwards, as it appears, by setting up a claim to it in his own right, by obtaining a warrant for it in his own name, founded upon his personal residence upon it. These acts may be considered anything except abandonment, for they are wholly incompatible with it. Besides, as early as 1805 the land was assessed, by the commissioners of the county, with taxes, in the name of the Meredith warrant, which, as the land was then unseated, became a lien upon it until paid; so that no abandonment of the warrant or the land could be made after that, which would prevent and defeat the commissioners from collecting the taxes, if not paid, by a sale of the land. A sale for this purpose was made of the land in 1820, at which the commissioners were compelled to buy it in themselves, as no other bid for it a sufficient sum to cover all the taxes in arrear, and the costs accrued thereon. The commissioners held the land until 1830, during which time no pretence of abandonment can be alleged, when they sold it to a Joseph Crichfield, who sold the same to Jacob Chorpenning; and after passing from Jacob Chorpenning to Charles Ogle, Esq., it was redeemed or purchased by John Y. Barclay, the attorney of Clymer and Woods. In the mean time, the settlement and improvement, made upon the land by Peter Henry, must be considered as made for the benefit of his lessors, Henry Clymer and Henry Woods, so that the warrant obtained by him for the land, gave him no right to hold it against them, or their heirs and assigns, after the expiration of the lease which he took of them. Neither could the decision of the board of property, declaring the Meredith warrant and survey void, supposing it to have been

[Cleavinger v. Reimar.]

correct, avail him anything, without destroying the relationship between him and his lessors; and this it certainly could not effect. But I am inclined to think, that the decision of the board cannot be supported; because the Act of Assembly of the 9th of April 1781, made warrants, granted after the 4th of July 1776, and before the 10th of December of the same year, valid, so that the Meredith warrant, which was granted on the 23d of August in that year, was not void for that reason, as the board of property thought. The State having received the purchase money, the £15 sterling, as we may presume, because warrants were not granted then for lands, without the whole of the purchase money being paid at the time of granting them, it would have been inequitable in the State not to have made provision for rendering such warrants effectual. We are therefore of opinion that the court below erred in directing the jury as stated above.

The *fourth* error is, that the court, in their charge to the jury, assumed the fact, that the agreement in writing, between Mr Cox and the attorneys of Clymer and the executors of Henry Woods, was made before the commencement of the year 1839, instead of leaving it to the jury to say whether or not it was made prior to that year. What the court said to the jury in this respect was, that " sometime prior to the year 1839, Mr Cox entered into an agreement with Messrs Ogle and Forward, attorneys of Clymer and Woods, which is in the following words :" and then read the agreement. Although the agreement is without date, yet it is perfectly obvious from the terms of it, that it was made prior to the year 1839 ; for by it Mr Cox, among other things, was " to give his notes for $630, payable 1st of May 1838," which could not have been, had the agreement been entered into subsequently to the 1st of May 1838. That it was made, therefore, before the commencement of the year 1839, was not only a fair but a necessary deduction from the terms of the agreement *itself*; and as it was in writing, it was proper for the court to make it, and to instruct the jury accordingly.

The *fifth* error is, that the verdict and judgment are for the whole of the land, whereas there is no evidence whatever that Mr Cox purchased more than two-thirds of the tract; consequently, under the view that the court took of the case, which was that the plaintiff below derived no title from Peter Henry to the land, excepting what he had a right to claim by virtue of Mr Cox's agreement for the purchase of it, in consequence of Mr Cox's being the attorney at law of Henry, in an action of ejectment against him for the land at the time. This point, that Mr Cox's agreement only embraced two-thirds of the whole tract, does not seem to have been made, on the trial, by the counsel for the defendants below. At all events, it is not included in any of the points submitted by them to the court. It therefore does not seem to arise properly here. However, it may be observed, that Mr Cox's

[Cleavinger v. Reimar.]

agreement for the purchase of the land appears to embrace the whole tract; but whether he ever obtained a deed of conveyance from the executors of Henry·Woods, for their testator's third of it, does not appear. This might have been a ground for a new trial in the court below, but cannot be taken advantage of on a writ of error.

The *sixth* error is, that the agreement of Mr Cox for the purchase of the land, not having been made prior to the 1st of November 1838, the date of the deed of conveyance from Peter Henry and wife to Reimar the plaintiff; the latter, therefore, could not derive any benefit from Mr Cox's purchase, as it was subsequent to the conveyance received by him of Henry, which dissolved the relation of client and attorney between Henry and Cox, if it was not at an end before. It is a sufficient answer to this error to say that it is not sustained in point of fact. For, as has been shown already, Mr Cox's agreement for the purchase must have been made before the 1st of May 1838; for on that day he was to pay $630 as part of the purchase money for the land.

The *seventh* error, which is the last, is an exception to the charge of the court, for instructing the jury, that if Mr Cox, without Peter Henry's having given up all intention to prosecute his claim to the land, or sell his title to some one, who would be better able to do it, went on and purchased the title of Clymer and Woods, for his own benefit, without Peter Henry's consent, and then sold the property to William Henry, one of the defendants, with a knowledge on the part of William Henry, that Mr Cox was the attorney of Peter Henry in the ejectment against him, or that William Henry had paid no part of the purchase money to Mr Cox, the defendants could not set-up the title of Clymer and Woods, either as vested in themselves or as outstanding, and that the plaintiff was entitled to this verdict for the land, without having made a tender of the money, which Mr Cox had or was to pay for the title of Clymer and Woods. We think the court erred in this instruction to the jury, and instead thereof, they ought to have told the jury, it was competent for the defendants below to set up the title of Clymer and Woods, in order to defeat the plaintiff's claim to the land, even if William Henry had notice at the time he purchased of Mr Cox, or before he paid any of the purchase money, that Mr Cox was the attorney of Peter Henry, when he bought of Clymer and Woods, so long as the plaintiff had not made a tender, before instituting his action, of the amount of money which Mr Cox had paid and was bound to pay for the title of Clymer and Woods. Had the plaintiff below, before he brought this action, paid or made a tender of the amount of money that Mr Cox paid and was bound to pay for the Clymer and Woods title, then it would have been competent for him, according to the decision of this court in *Galbraith* v. *Elder*, (8 *Watts* 93, 94, 95), and the principles there laid down, to have claimed all the benefit

III. — 2 R

[Cleavinger v. Reimar.]

and advantage from that title, that he would have been entitled to had he been the owner or purchaser of it himself. See also *Hall* v. *Hallet*, (1 *Cox* 134), where it is said, that upon principles of policy no attorney shall be permitted to purchase anything in litigation, of which litigation he has the management. It is certainly upon principles of public policy, and not on the ground of fraud, that an attorney shall not be permitted to avail himself of a title, which he purchases, to land that he is retained and employed to support a different title to, for his client; and hence the objection, that a party who has been guilty of a wilful fraud, shall not have the money reimbursed which it cost him, by the one who claims the benefit of it, is not applicable. Mr Cox may have intended no injury to Peter Henry, by purchasing the Clymer and Woods title; yet, it is somewhat strange, if the testimony of Peter Henry be true, that Mr Cox should have purchased the Clymer and Woods title, after telling Henry that his title was the better one of the two, and that he could hold the land under it. It is probable, however, that some misapprehension, in regard to this matter, took place between Mr Cox and Mr Henry. But, be that as it may, we are of opinion that the plaintiff below cannot claim the benefit of the Clymer and Woods title, without paying or tendering to Mr Cox or his assignee, the amount of the money, which Mr Cox paid and was bound to pay for it.