HARMAN YERKES, Plaintiff and Respondent, v. TAYLOR CRUM, Defendant and Appellant.

**Attorney and Client—Acquiring Title Adverse to Client—Amendment of Answer.**

1. While the relation of attorney and client continues the attorney can, as against his client, acquire no beneficial interest in or title to the subject-matter of the litigation antagonistic to the title or interest of his client. Whether or not such title so acquired can be assailed by a third party is a question upon which the members of this court are not agreed.

2. Where an answer shadows forth a good defense, but states it imperfectly, the defect should be met by a motion calling for an amend-

ment curing such defect, and not by motion for judgment on the answer as frivolous.

(Opinion filed July 13, 1891.)

*A*PPEAL from district court, Cass county; Hon. WILLIAM B. McCONNELL, Judge.

*J. E. Robinson* and *Taylor Crum,* for appellant. *Stone, Newman & Resser* for respondent.

Action for cancellation of tax deed, to quiet title to certain realty in plaintiff and for possession of the same. Judgment for plaintiff. Defendant appeals. Reversed.

Mr. Crum presented the case for the appellant in an exhaustive oral argument, but cited no authorities in his brief.

Stone, Newman & Resser for respondent:

Appellant could not, pending the litigation between respondent and the Hadleys, in which he acted as attorney for them, acquire any interest in the premises in question antagonistic to the Hadleys by the purchase of an outstanding tax title. Such purchase is wholly void and the question may be raised by respondent. Lynn v. Morse, 39 N. W. Rep. 203; Greenhood on Public Policy, p. 437; Rogers v. Marshall, 13 Fed. Rep. 59; Henry v. Raiman, 25 Pa. St. 354; Lindsey v. Sinclair, 24 Mich. 380. If not wholly void appellant would take in trust, and such purchase would inure to the benefit of the Hadleys, and any interest thereby acquired would pass *co instanti* and vest in respondent by operation of law, and this could not be prevented or such interest divested by any act or consent of the Hadleys. Stockton v. Ford, 11 How. 232; Moore v. Bracken, 27 Ill. 22; McDowell v. Milroy, 69 Ill. 498; Reichhoff v. Brecht, 2 N. W. Rep. 522. Equity would treat appellant as trustee for respondent in the purchase in question. His act was the act of the Hadleys. Black on Tax Titles, § 138; Cooley on Taxation, p. 345-6; Blackwell on Tax Titles, *399; Frye v. Bank, 11 Ill. 367; Douglas v. Dangerfield, 10 Ohio, 152. Such a transaction is always presumptively fraudulent and void and the burden of proof is on appellant, and it is sufficient for respondent to allege

the transaction alone. Whipple v. Barton, 3 Atl. Rep. 922; Briggs v. Hodgdon, 7 Atl. Rep. 387; Rogers v. Mining Co., 9 Fed. Rep. 721; Jennings v. McConnell, 17 Ill. 148; Kisling v. Shaw, 33 Cal. 425; Merryman v. Euler, 46 Am. Rep. 564.

The opinion of the court was delivered by

BARTHOLOMEW, J. A brief statement of the pleadings is necessary for a proper understanding of the points raised by this appeal. The complaint states that plaintiff is the owner of a certain lot in the city of Fargo, and as his source of title avers that in December, 1881, Lafayette Hadley and Kate Irene Hadley, his wife, executed to plaintiff a mortgage on said lot to secure a certain sum of money, the mortgagors undertaking to pay all taxes that had been or might be assessed against the premises; that default was made in the payment of the amount secured by the mortgage, and the same was foreclosed and bought in by plaintiff for the amount due upon said mortgage, with costs and disbursements, and, no redemption thereof being made, plaintiff received a sheriff's deed for said lot; and in October, 1885, he commenced an action against the Hadleys to quiet title, and for possession; and that under the decision of the supreme court of Dakota territory rendered on or about March 2, 1889 (see Yerkes v. Hadley, 40 N. W. Rep. 340), the title to said lot was quieted in plaintiff, and he was in fact in possession; that during the whole of the time said action was pending the defendant, Crum, who was a duly admitted attorney in the courts of said territory, acted as the attorney for the said Hadleys, and conducted said litigation in their behalf, and as their sole attorney; that the Hadleys neglected to pay the taxes assessed upon said lot for the year 1884, and in October, 1885, said lot was sold by the treasurer of Cass county for said delinquent taxes, and tax-sale certificate therefor issued to one Clifford; that about April 20, 1887, and while the defendant, Crum, was acting as the attorney of said Hadleys in said litigation, Clifford assigned said certificate to said defendant, and on October 6, 1887, defendant surrendered the same, and received a tax-deed for the lot, and subsequently took possession thereof, claiming title under the tax-deed. Plaintiff also alleged tender

of the amount due under the tax certificate. The prayer was for the cancellation of said deed and the restoration of possession to plaintiff. A demurrer to the complaint as not stating a cause of action was overruled, and exception taken. Subsequently defendant filed his answer, the material portions of which are as follows : "Defendant specifically denies that he was the attorney for Lafayette and Kate Irene Hadley, or either of them, during all the time from or about the 3d day of November, 1881, until on or about the 11th day of March, 1889, either as alleged in said complaint or otherwise; but in this behalf defendant alleges that he was the attorney for Kate Irene and Lafayette Hadley from on or about the 9th day of October, 1885, until the 8th day of April, 1887, on which said 8th day of April, 1887, the relation of attorney and client between the defendant herein and said Kate Irene and Lafayette Hadley ceased and terminated by mutual consent; that after said 8th day of April, 1887, defendant acted in said action in his own interest and in his own behalf, using the name and title of the original action, under and by virtue of § 85 of the Code of Civil Procedure." Then follows a specific denial that defendant was acting as attorney for the Hadleys on April 20, 1887, when the tax certificate was assigned to defendant, or on October 6, 1887, when the tax-deed was executed. On the coming in of the answer plaintiff moved for judgment on the pleadings, and the motion was granted, and judgment rendered accordingly.

Appellant urges the insufficiency of the complaint in this court. It is admitted that it would be a good complaint, as against the Hadleys, were they attempting to hold under this tax-deed; and it is no doubt equally true that the complaint would be insufficient against a tax-title holder in no manner connected with the Hadleys. The due and orderly administration of the law requires that causes should be presented to the courts by men specially fitted to aid the courts in the discharge of their duties—men who spend their lives studying the great principles of justice, and their application to the infinite variety and countless ramifications of the business affairs of life. The proper discharge of the functions of an attorney requires that the client should place his affairs in the hands of his

attorney without hesitation or reservation—like an open book, to be read and understood in every detail, and the more ignorant and inexperienced the client the greater the necessity. From these conditions it inevitably follows that the attorney will often have opportunities to take unconscionable advantage of the ignorance or necessities of his client. The law has always been keenly solicitous to forestall any such result, and this alike for the protection of the financial interests of clients and the high standard of the legal profession. It does not wait for fraud or deceit to be alleged and proven. It simply looks at the transaction, and, if the circumstances be such that the confidence of the client may be abused, or a temptation held out to the attorney to be unfaithful to his trust, it places the stamp of prohibition upon that transaction. "Such transactions are not held to be void upon the ground of intentional fraud or proven bad faith, but because the relations of the parties are such that the one may make use of his position of power and influence over the other, or of his superior knowledge derived while in the employment of the other, to take an unfair advantage of him. The law, upon grounds of high public policy, seeks to destroy the temptation to abuse such opportunities, and therefore does not inquire whether the transaction was fraudulent or not." Rogers v. Marshall, 13 Fed. Rep. 61. "Where fidelity is required, the law prohibits everything which presents a temptation to betray the trust. The orison which deprecates temptation is the offspring of infinite wisdom, and the rule of law in accordance with it rests upon most substantial foundations." Henry v. Raiman, 25 Pa. St. 359. Among the transactions thus prohibited are those by which an attorney, while acting as such, obtains any title to or interest in the subject-matter of the litigation which is antagonistic to the title or interest of his client. In the judgment of the writer of this opinion, such transactions are nugatory, and wholly void, so far as they purport to transfer any beneficial title or interest to the attorney. If he takes anything, he takes it in trust for his client, and it at once inures to the benefit of his client. See, on this point, Cunningham v. Jones, 37 Kan. 477, 15 Pac. Rep. 572; Elliott v. Tyler, (Pa.) 6 Atl. Rep. 917; Zeigler v. Hughes,

55 Ill. 288; Wright v. Walker, 30 Ark. 44; Cleavinger v. Reimer, 3 Watts & S. 486; Lynn v. Morse, 76 Iowa 665, 39 N. W. Rep. 203; Harper v. Perry, 28 Iowa 57; Baker v. Humphrey, 101 U. S. 494; Briggs v. Hodgdon, 78 Me. 514, 7 Atl. Rep. 387. Many more cases on this point are found in the books, some of them, like the case in 101 U. S., only going to the extent of declaring that the attorney cannot, without the client's consent, purchase an antagonistic interest. This qualification is usually found in controversies between the attorney and client. The precise point was raised and fully discussed in Cunningham v. Jones, *supra*, and the conclusion reached that the failure of the client to object did not in any manner validate the transaction. See, also, West v. Raymond, 21 Ind. 305. I think this conclusion is sound. If the purchase by an attorney of a title to the subject-matter of the litigation antagonistic to the title of his client can be assailed only by the client, then the strongest temptation is held out to the attorney to abuse the confidence of the client to exercise his power and influence over the client to prevent any objection on his part, and it need not be stated that the attorney's efforts in that direction would be successful in a large percentage of cases. ' To so hold, it seems to me, would be to invite the very results that the law abhors. I think the courts should forever remove this temptation by declaring all such purchases void, by whomsoever attacked. These are not the views of the court, however. Another class of transactions which have met with the displeasure of the courts is that by which the attorney purchases from the client the client's interest in the subject matter of the litigation. Some most respectable courts have held that such a purchase could not be made while the relation of attorney and client continued. West v. Raymond, *supra*; Hall v. Hallet, 1 Cox 134; Rogers v. Marshall, *supra*. And we nowhere find that this rule has been relaxed further than to hold that such transaction is presumptively fraudulent, and the burden rests upon the attorney to establish the perfect fairness, adequacy, and equity of the transaction. Bingham v. Salene, 15 Or. 208, 14 Pac. Rep. 523; Dunn v. Dunn, 42 N. J. Eq. 431, 7 Atl. Rep. 842. Cowee v. Cornell, 75 N. Y. 91, 100; Nesbit v. Lockman, 34 N. Y. 167. Viewed in

the light of these well settled and salutary principles, it is clear to me that the demurrer to the complaint was properly overruled. The allegation was that this defendant, while acting as the attorney for the Hadleys in certain litigation between them and this plaintiff, wherein the title to this same lot was the sole issue, each claiming ownership, took an assignment of a tax certificate on said lot, and received a tax deed thereon. This deed, under the authorities cited, could convey no beneficial interest to defendant. The tax-title was of necessity antagonistic to any title the Hadleys had or claimed to have in said lot, and whatever interest might be conveyed to the attorney would inure at once to the benefit of the Hadleys, and under the decision in Yerkes v. Hadley, *supra*, it would inure to the benefit of this plaintiff. It was not necessary, as urged, to allege that the Hadleys had title when they executed the mortgage. That fact was not material. They covenanted to pay the taxes, and this tax deed was the necessary consequence of the breach of their covenant to plaintiff. The chief justice concurs in this conclusion, but for other reasons. But the ruling of the learned trial court upon the motion for judgment ought not, we think, to be sustained. Section 5026, Comp. Laws, provides that, if an answer be frivolous, the party prejudiced thereby may move the court for judgment thereon, and judgment may be given accordingly. In Bank v. Sawyer, 7 Wis. 383, a frivolous pleading is thus defined: "It is a pleading interposed for delay, and its frivolous character indicates bad faith in the pleading. Hence the severity of the judgment in striking it off. The party who thus trifles with the administration of justice, and the necessary forms by which it is administered, forfeits all claims to the favor of the court. He is not entitled to amend or plead over, as in case of error in pleading." This case was, however, submitted to us apparently on the theory that, if the answer was vulnerable to a demurrer, the ruling of the trial court should be affirmed, although we might not think the pleading frivolous; and we will decide it upon that basis, but will not decide what is the proper practice, under our statute, upon this point, until the question is presented in argument. The answer in this case admits that the defendant herein appeared on the record as

attorney for the defendants in the case of Yerkes v. Hadley, from its inception, in 1885, until its final termination, in March, 1889; but it is clearly alleged that on the 8th day of April, 1887, the relation of attorney and client theretofore existing between this defendant and the Hadleys ceased and terminated by mutual consent, and that after said date this defendant appeared in and defended said case in his own interest and behalf, using the name and title of the original action, under § 85 of the Code of Civil Procedure. It is clear that, if defendant ceased on the 8th of April, 1887, to in any manner represent the Hadleys as their attorney, then he had a right to take an assignment of the tax certificate on April 20, 1887, and to take a deed thereon when the certificate matured, and the title so received could be pleaded in defense to this action. Respondent does not question that proposition, but insists that the answer does not state sufficient facts to show this to be true, because, to enable defendant to continue to use the names of the Hadleys in his own behalf under the statute alleged, he must have purchased the interest of the Hadleys in the subject-matter of the litigation, and that no such purchase is alleged; and, further, that if any such purchase was made, it was made when the relation of attorney and client existed, and there are no allegations to overcome the presumption of law that such purchase was fraudulent and void. It may be conceded that, in order to establish the allegation in the answer, the defendant would be obliged to prove a purchase by himself of the interest of the Hadleys in the subject-matter of the litigation, and that, if such purchase was made while the relation of attorney and client existed, the further burden would be thrown upon him to establish the perfect fairness, adequacy, and equity of the transaction. But this evidence would be necessary simply to establish the ultimate fact alleged, to-wit, that after April 8, 1887, the case of Yerkes v. Hadley was defended solely in the interest of this defendant, and that the relation of attorney and client had ceased to exist. Whether or not such proof could be introduced under the answer as it stands is not before us. But it is clear that the defect in this answer, if any, is not that it does not state a defense, but that it states a defense im-

perfectly; that it is not sufficiently full, specific, definite, and certain. These objections should be met by a motion requiring an amendment. In Kelly v. Barnett, 16 How. Pr. 135, which was an application for judgment on an alleged frivolous pleading, the court said: "Vagueness of pleading, it is well settled, is not frivolousness. It is to be corrected by an amendment, and not by judgment. It is enough on this application that a good defense is shadowed forth." See, also, Dagal v. Simmons, 23 N. Y. 491. For the error pointed out, the trial court will reverse its judgment, and proceed with the case in accordance with this opinion. Reversed.

WALLIN, J., (concurring.) I agree with my associates in holding that the judgment must be reversed. The answer is meager and vague, but it embodies a material issue of fact, and hence it cannot be ignored as wholly worthless. The district court erred in granting the motion for judgment on the pleadings. Upon such a motion every reasonable intendment must be indulged in support of the pleading which is assailed by the motion. I express no opinion concerning the other features of the case contained in the views of my Brother BARTHOLOMEW.

CORLISS, C. J. I concur in the result, but feel constrained to withhold my assent to the doctrine enunciated in Cunningham v. Jones, 37 Kan. 477, 15 Pac. Rep. 572. I do not at present believe that the adjudications warrant the broad doctrine of that case. Nor can I see any foundation for it in principle, keeping in view the reason for the rule which condemns the purchase by an attorney of an interest adverse to his client pending the litigation. It is sufficient for the protection of the client that he should have the right to treat the act of his counsel as void, or to claim the benefit of all that the counsel has secured. That an utter stranger to the client and the interests of the client in the litigation should have the power, officiously, to interfere and vindicate the right of the client to his attorney's zealous aid, unaffected, whether consciously or unconsciously, by any hostile interest, would seem anomalous. If the purchase of an adverse interest by the attorney is utterly void, as held in the Cuningham Case, then, no matter how willing the

client may be to recognize and affirm it, the act cannot be ratified, and the stranger may avail himself of a defense of which he could not have taken advantage had the purchase orignally been made by the client, and the attorney honestly succeeded to his interest. Of course, this argument assumes that the client owes no duty to the stranger in respect to the subsequently acquired interest. In the case at bar he did owe such duty, and it is on that ground that I agree with the opinion of the court that plaintiff could insist upon the invalidity of the purchase by the attorney of the Hadleys, assuming that he was then acting as attorney for them. But in the Cunningham Case no such obligation existed. The theory on which the plaintiff here can insist upon the invalidity of the attorney's title is not that the deed was void, but was, in legal contemplation, a purchase by the Hadleys themselves. Having the right to claim that the purchase should inure to their benefit, they were bound to avail themselves of such right under the covenant in their mortgage, and under their duty to plaintiff as mortgagors, irrespective of such a covenant, to pay the taxes upon the land. They could not waive this right, for they held it only as trustees for the plaintiff, who was the sole beneficiary. If, where the client owes no duty to the one who seeks to destroy the attorney's title, the attorney, with the free assent of the client, cannot buy an interest adverse to both parties, then the stranger would enjoy an advantage where the attorney should purchase which he would not enjoy in case the client, his antagonist, should buy. Assume that there is no duty resting upon either party to a litigation touching the title to real estate to pay taxes thereon, so far as the other parties is concerned. In such a case the defendant might purchase the land on tax-sale, and his inchoate right might, by lapse of time and the execution of a deed, ripen into a perfect title. Should he be unsuccessful in his defense, he nevertheless might stand impregnably upon his new title, under the tax-deed, in any future proceeding. It would not be void. Securing such title would involve no breach of duty to his antagonist. But should his attorney purchase on such tax-sale, then, if the purchase is void, no prior assent to, no subsequent ratification by, the

client of such purchase, however solemnly made, could preclude his adversary from taking advantage of this wholly fictitious fraud upon the client, which the client himself had voluntarily disclaimed. This would be allowing a stranger to vindicate the right of the client to his attorney's undivided allegience when the client himself insists that he has no cause for complaint. The true reason for the rule inhibiting dealings by the attorney adversely to the interests of his client is the protection of the client. As fraud in such cases might be difficult of proof, and as men may be influenced unconsciously by their personal interests pulling them in the opposite direction, while striving to be loyal to their trusts and while honest in the belief that they are loyal, the law has placed in the hands of the client the power arbitrarily in all cases to thurst aside the ordinary legal effect of the attorney's acts so far as they clash with the client's interests, however fair the transaction may have been. There is no justification for pushing the rule further, thus enabling a stranger to reap profit from an act of the attorney where the same act performed by the client would have barred the stranger's right. Under such a stringent rule, the purchase being a nullity, the client could not, by succeeding to the attorney's interest, secure that paramount right which he could have obtained had he originally made the purchase himself; and thus a rule ordained for the protection of the client is turned against him for the benefit of a stranger.