MINNIE RIEGI *vs.* H. W. PHELPS, *et al.*

Opinion filed July 23rd, 1894.

### Attorney and Client—Fraudulent Concealment.

. Defendants, having collected $369 for plaintiff on a note owned by her, telegraphed her local attorneys to ascertain whether she would take $100 and they $25, without disclosing how much had been collected, or that any collection had been made at all. Plaintiff and her local attorneys accepted the offer to pay the $125, in ignorance of the fact that the collection had been made, and the money was paid them by the defendants. Discovering the facts, this suit was brought to recover the balance, less a reasonable fee for collection. *Held*, that the action could be maintained; that defendants were guilty of a fraud in entrapping plaintiff into the acceptance of $100 by concealing from her the fact that they had already collected $369.

### Good Faith Requires Full Disclosure of Facts.

An attorney or agent who has made a collection owes to his client or principal the duty of a full disclosure of all the facts, in settling with the client or principal. Any concealment of a material fact is fraudulent.

Appeal from District Court, Walsh County; *Morgan*, J.

Action by Minnie Riegi against H. W. Phelps and J. D. Phelps to recover a balance collected by defendants, as attorneys, on a note placed in their hands for collection. From a judgment for plaintiff, defendants appeal.

Affirmed.

*Phelps & Phelps*, upon the brief, (*John M. Cochrane*, on oral argument,) for appellant.

. A mere agent of an agent is not responsible as such to the principal of the latter. Section 3790, Comp. Laws. Where a creditor places a claim for collection in the hands of a law and collection agency, who send it to a local attorney, there is no relation of attorney and client between the creditor and the local attorney. *Hoover* v. *Greenbaum*, 61 N. Y. 305. A sub-agent is exclusively accountable to his immediate principal and can look for his compensation only to his immediate employer as well. 1 Am. and Eng. Enc. Law, 395; Story on Agency, § 387. *Montgomery*

*Co. Bank* v. *Albany City Bank*, 7 N. Y. 459. No fraud is pleaded in the complaint, there is no allegation that the plaintiff was misled, or that she relied on any act or omission of the defendants. The issues made by the pleadings must control in determining the case. *Prairie School Tp.* v. *Haseleu*, 55 N. W. Rep. 938, 3 N. D. 328.

*Sauter & Fraine*, for respondent.

The sub-agent, lawfully appointed, represents the principal in a like manner with the original agent, § 4005 Comp. Laws. Where a sub-agent is employed by an agent to receive money for the principal, the principal may treat the sub-agent as his agent and sue him for the money received. *Miller* v. *Farmers Bank*, 30 Md. 392; *Wicks* v. *Hatch*, 62 N. Y. 535. *Strong* v. *Stewart*, 9 Heisk. 137. An attorney employed by the agent for his principal is the principal's attorney and not the agents. *Porter* v. *Peckham*, 44 Cal. 204. The power of substitution is impliedly given to an agent, when the object of the agency is of such a character that it cannot be attained without a substitution; as where a draft payable at a distant place was left with the bank for collection. *Planters Bk.* v. *First Nat. Bk.* 75 .N. Car. 534; *Bank* v. *McGilvray*, 64 Am. Dec. 92; *Fabens* v. *Bank*, 34 Am. Dec. 59; *Bank* v. *Trip*, 1 Peters U. S. 25. Or where the well known custom of trade is so understood by the parties. *Bodine* v. *Ins., Co.* 51 N. Y. 117; *Van Schoick* v. *Ins. Co.*, 68 N. Y. 434; *University* v. *Denny*, 47 Vt. 13; *Grady* v. *Ins. Co.*, 60 Mo. 116. An attorney who bargains with his client on a matter of advantage to himself, is bound to show that the transaction is fair and equitable, and that the client was fully informed of his rights and interests in the subject matter of the transaction, and the nature and effect of the transaction itself, and was so placed as to be able to deal with the attorney at arms length. *Kisling* v. *Shaw*, 91 Am. Dec. 644; *Roberts* v. *Armstrong*, 89 Am. Dec. 624; *Cotton* v. *Sharpstein*, 80 Am. Dec. 774; *Thomas* v. *Turner*, 12 S. E. Rep. 149. Weeks on Attorneys, § § 79 and 262. Where an attorney received a note for $250 for collection, and

after ascertaining that it would be paid in full, agreed with his client to pay $75 of any amount collected and retain the balance for a fee; in assumpsit for money had and received, the burden of proof is on the attorney to show that the contract was fair and equitable. *Burnham* v. *Hasleton*, 20 At. Rep. 80; *Michould* v. *Girod*, 4 How. 554. The strongest justification and argument found to sustain the action of defendants, is in Part 1, King Henry IV, Act 1, Scene 2.

> *Prince Henry:*—"I see a good amendment of life in thee, from praying to purse taking.
> *Fal.*—Why, Hal, 'tis my vocation, Hal;
> 'Tis no sin for a man to labor in his vocation."

CORLISS, J. This case presents the betrayal of a trust reposed in an attorney. The plaintiff was the owner of a note for $235, on which was due the principal and about 13 years' interest. It was executed by her brother. She lived in Rochester, Minn. After the execution of this note her brother removed to the territory of Dakota to live. In August, 1892, she placed the note in the hands of Bear & Granger, attorneys at Rochester, Minn., with instructions to them to collect it for her. At this time she knew that her brother was living in the State of North Dakota. This note was sent by Bear & Granger to the defendants, who were attorneys practicing law at Grafton and Minto, in this state, with directions for them to collect the amount due on it. Upon being notified by defendants that they had this note for collection, the maker of it (plaintiff's brother) came to the office of the defendants in Grafton, and in a short time paid them $369 in settlement, certain claims of the brother against his sister being deducted from the amount of the note in the adjustment of the matter. After this money had been paid, the note delivered, and the whole matter closed, so far as the brother was concerned, defendants (or rather defendant H. W. Phelps, on behalf of defendants) sent Bear & Granger the following telegram: "Will client take one hundred dollars net for Folske note, and you twenty-five? He claims forty paid and board account of eighty-five. Answer." Bear & Granger wired acceptance of this offer,

and defendant paid them the amount stated in the telegram, *i. e.* $125. Plaintiff, having discovered how much had been collected, brought this action to recover the balance, less a reasonable collection fee.

Why was this telegram sent by the defendants? Certainly not that the defendants might, by the answer to it, receive definate instructions as to the terms on which they should settle, for they had already settled. The only possible explanation of their object in sending it is that they desired to entrap the owner of the note into consenting to receive only a small part of her property, and thus fraudulently secure an enormous collection fee by concealing from the attorneys in Rochester, Minn., and the owner of the note, the true state of facts. It is insisted that the charge made by the defendants for the collection is reasonable, as the note was outlawed. If defendants thought so, why did they studiously suppress the truth? Why did they not disclose the amount paid, and remit the balance, claiming that they were entitled to retain $244 out of a collection of $369, or nearly 70 per cent. of it? They knew that such a claim was monstrous, and they covered up the truth, hoping to be able to retain this amount by a deceit which might never be discovered. It is difficult to write dispassionately in such a case as this. There is nothing in defendants' claim that they were not acting as attorneys for the plaintiff. They knew from the talk with her brother that she was the owner of the note. Their telegram to Bear & Granger discloses the fact that they knew that that firm did not own the note, but had sent it forward for a client for collection. They say in their telegram, "Will client take $100, and you twenty-five." It is said that the relation of attorney and client did not exist, because they did not know her name. This is a sample of the points which are here urged to secure a reversal of this righteous verdict, in the face of the undisputed facts which have been already set forth in this opinion. The telegram not only suppressed the true facts; it also contained an implied representation that the best the defendants could do was to obtain for plaintiff

and her attorneys in Rochester, Minn., $125, after securing a reasonable fee for themselves.   It was this idea that the telegram conveyed to the minds of the plaintiff and her attorneys there, and it was the intention of the defendants that just such an impression should be derived by the client and her local attorneys from the message.   On no other theory can the conduct of the defendants in sending the dispatch be accounted for, and it is obvious that any client who had confidence in an attorney making such a communication under such circumstances would assume that the attorney meant to retain only a reasonable fee for his services, and could obtain only the sum specified in addition to such reasonable fee.   Whether Bear & Granger were authorized to employ the defendants is unimportant.   With full knowledge of the fact of such employment, she ratified their acts in this respect.   When the telegram was received from the defendants, Bear & Granger read it to her.   This telegram disclosed the fact that other attorneys were acting for her in the matter, and Mr. Granger, one of her attorneys at Rochester, testified that before that time he had told plaintiff that he had sent the note to a firm of lawyers at Grafton, N. D., for collection.   At no time did the object to the employment of defendants.   On the contrary, she acquiesed in and fully ratified their employment by her attorneys, Bear & Granger.   Whether the defendants were acting strictly as attorneys for plaintiff, or only as her collection agents, is entirely immaterial.   As her agents they owed her the duty of absolute fealty to her interests in the matter.   They were under obligations to disclose to her, or to those acting for her, who had employed them, all facts affecting her rights.   They were bound to apprise her of the amount which had been collected before securing her assent to accept from them any sum in settlement of the note.   To inveigle her into consenting to receive only 30 per cent. of the amount collected, by a suppression of the facts, was not only a betrayal of trust, but, under the circumstances, amounted to a positive fraud.   We have cited no decisions, as the principles which govern the case are elementary.   We refer,

however, to *Burnham* v. *Hesleton* (Me.) 20 At. 80, as being very much in point.

Many of the errors assigned are unworthy of notice, and, in view of the admitted facts, none of the alleged errors could possibly have been prejudicial, even assuming them to be errors in the case. The court did not err in withdrawing everything from the jury, except the single question as to the amount of reasonable compensation for making the collection. That amount was fixed by the verdict of the jury. This was all that defendants were entitled to retain out of the balance in their hands.

The judgment of the district court is therefore affirmed. All concur.

(60 N. W. Rep. 402.)

(We are requested by the defendant H. W. Phelps to state, and such appears to be the fact, that his brother J. D. Phelps, never had any connection with the transactions referred to in the opinion, and was in no manner interested therein; the business conducted by him (H. W. Phelps) at Grafton being his individual, and not the partnership, business.)

---

NOTE—An attorney can as against his client acquire no beneficial interest in or title to the subject matter of the litigation antagonistic to the title or interest of his client. *Yerkes* v. *Crum*, 2 N. D. 72. But he may obtain a lien upon moneys due his client, in the hands of the adverse party. *Clark* v. *Sullivan*, 3 N. D. 280, and this lien extends to and embraces any judgment rendered in an action to recover such moneys, also to appeal undertaking and the cause of action thereon. *Clark* v. *Sullivan*, 3 N. D. 280. An attorney cannot without the consent of his client be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment, but this privilege will not extend to communications made concerning a deed of conveyance drawn by an attorney when he acted as a mere scrivener. *O'Neill* v. *Murry*, 6 Dak. 107.