# THOMAS J. SUTHERLAND
## v.
## SELAH REEVE.

*Attorney and Client—Purchase of Subject of Litigation by Attorney—Practice—Judgments and Decrees—Limitations.*

1. A solicitor can not secretly purchase the subject-matter of a given litigation or any interest therein, and hold it adversely to his client.

2. If he does so purchase, he will be held to be a trustee for his client as to the property or interest so purchased. Such purchase is against public policy.

3. In a court of equity, a *cestui que use* may avail himself of all the defenses of which the trustee could.

4. A judgment obtained by fraud is not only a fraud upon the party, but upon the court.

5. The defense of *laches*, by reason of lapse of time and inaction of the party seeking relief, will not be permitted where the party was in ignorance of the material facts connected with the transaction which is attacked, or of his rights in relation thereto.

6. The purchaser of a chose in action takes it subject to all equities of the original parties thereto. and a second or subsequent assignee takes it subject to all equities existing between any prior assignor and assignee.

7. The improper concealment of facts by an attorney will vitiate a transaction involving the obtaining by him of the subject of a given controversy for his own benefit, as much as misrepresentation or actual fraud.

8. The statute of limitations in cases of this nature is applied in equity only by analogy to the limitations at law, and a court of equity will not apply the statute, where it would be inequitable to do so.

## [Opinion filed July 30, 1891.]

IN ERROR to the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. SAWIN & VANDERPLOEG and THOMAS J. SUTHERLAND, for plaintiff in error.

Messrs. GEORGE R. GRANT and CHARLES E. POPE, for defendant in error.

*Per Curiam.* On the hearing of this case in the Circuit Court, the following opinion was rendered by Judge Tuley:

"The bill alleges that about February, 1874, he (Reeve) retained Sutherland as his solicitor, to attend to and collect the claim of Reeve against the Great Western Telegraph Company, for a reasonable compensation to be paid out of the proceeds of the claim when collected, and that up to the filing of the petition in this case, Sutherland continued to be his solicitor in said matter. That in 1876, David A. Gage, who it appears was a friend of Reeve's and had been president of the telegraph company, came to Reeve and

Sutherland v. Reeve.

stated that there was a move to sell the Great Western Tele-
graph Company to the Western Union, and requested Reeve to
assign his claim to him (Gage) so that he could show that he had
a right to control the same, and thereby the sale of the lines of
the Great Western Telegraph Company to the Western Union
could be accomplished, in which event Reeve would get the
money on his claim. If no sale could be made, he (Gage)
would return the assignment to him (said Reeve). That
he (Reeve) thereupon made a written assignment to Gage
of his said claim; that no sale was made to the Western
Union, but Gage did not return the assignment to Reeve.
That in 1879 Sutherland went to Denver, where Gage had
been living for a number of years, and obtained the assign-
ment of the claim to himself, upon the representations that he
was the attorney of Reeve, and upon the false representation
that Reeve had authorized him to take and receive from Gage
an assignment of the said claim. That thereupon, and on the
7th of August, 1879, Sutherland appeared in court in the Ter-
williger case and moved the court that the accounting by and
between Reeve and the Great Western Telegraph Company,
then pending, be henceforth carried on and be prosecuted on
the part of said Reeve for the use and benefit of himself
(Sutherland); which motion was signed, 'Thos. J. Sutherland,
solicitor of record for Selah Reeve, and the owner of the
claim of Selah Reeve against the Gt. West. Tel. Co.' That
the court thereupon entered an order to the effect that Suth-
erland was the owner of the claim, and that the same be prose-
cuted for his use and benefit. That no notice was given Reeve
of the filing of the motion, the pendency thereof, or of the
order therein. That on September 29, 1879, a decree was
entered in the Terwilliger case on the report of the master to
whom the case was referred, to take proof as to the claim of
said Reeve, finding and decreeing a claim in favor of Reeve
for $154,861.25.

The bill alleges that visible property of the company was
sold by the order of this court in 1880, for the sum of $15,000,
which petitioner supposed from information derived from
Sutherland exhausted all property and assets of the corporation

liable for the payment of its debts and the costs of the court proceeding. That there was in fact an unpaid stock liability to an amount more than sufficient to pay in full petitioner's claim, which fact it is alleged Sutherland studiously concealed from Reeve. That Reeve did not learn of the action of the court in adjudicating the ownership of his claim to Sutherland, nor of the assignment by Gage to Sutherland of his claim, until February, 1888.

The prayer of the bill is to impeach and to have set aside the order which finds Sutherland to be the owner of the Reeve claim, and that it be prosecuted for his benefit; and also, so much of the decree of September 29, 1879, as finds and decrees to the same effect, and that the proceeds of the claim be paid to Sutherland; also for general relief. An answer under oath is not waived.

### The Answer.

An answer under oath was required, and was filed by Sutherland. It has been twice or more amended, and one of the amendments put in without being sworn to. It is a serious question whether that does not make the entire answer as of no more value than if it was not an answer under oath. In the view I take of this case it is unnecessary to decide that question. It is sufficient to say that the answer carefully denies all the allegations of fraud or misconduct.

### The Defense set up by the Answer.

It admits the employment as attorney and solicitor to collect the claim, but avers that it was agreed that he was to have one-half of the claim as compensation, which Reeve should shortly assign to him, which he never did.

Admits that he (Sutherland) acted as Reeve's attorney from February, 1874, until May, 1875, and alleges that he has never since represented Reeve or claimed to represent him in said litigation, or about the prosecution of the claim.

Admits the motion and order therein that the claim of Reeve be prosecuted for his benefit, and that no notice thereof was given said Reeve, and alleges notice unnecessary, as Reeve then had no interest in claim, and he (Sutherland) was by purchase and assignment the owner thereof.

Sutherland v. Reeve.

Alleges Reeve had personal knowledge and notice of the order, in the said month of August, 1879, and charges *laches* by acquiescence from then until he filed this petition in 1889; also, that Reeve, shortly after entry of final decree of September 29, 1879, knew of same.

Alleges that Reeve gave no attention to the claim from July, 1876, and was not represented by counsel, and had no need to be, as he had no ownership in claim.

That Reeve had no money and paid none to his attorney. That defendant was continuously occupied during the year 1874, before the master, in the prosecution of the claim. That it became necessary for Reeve to raise money, and in order to do so he entered into an agreement in writing, dated October 12, 1874, with the McMullen Bros., by which he sold them an undivided 52½ per cent of said claim (and of any decree to be obtained thereon) after deducting all advances they might make Reeve. That they advanced said Reeve about $7,000.

That defendant did not know contents of the McMullen agreement until 1879. That the master in this cause about December, 1874, reported in favor of the Reeve claim to the amount of $54,000, objections were filed, and a few months thereafter Reeve, in fraud of defendant's and of the McMullens' rights, attempted to sell said claim; discovering which, defendant filed a bill in equity in this court to compel Reeve to assign him a portion of said claim, as provided by the retainer of said defendant. That Reeve became angry and thereafter refused to have any communication, oral or written, with the defendant, and immediately discharged defendant as his solicitor, and filed in the case a written discharge to that effect. That because of said discharge and the refusal of complainant to have any communication with defendant, he (defendant), from and after May, 1875, ceased to act as his solicitor, and has never since so acted or pretended so to act, or to represent said Reeve or his interest therein. That with but one exception Reeve has never since spoken to defendant and has never since been in his office, although said Reeve was in the city of Chicago constantly up to and during the

year 1878.    That since said month of May, 1875, Reeve neg-
lected and abandoned said claim, and refused to prosecute the
same because he believed there was no prospect of success, and
gave no further attention to the same; and because he had
sold and assigned the said claim on 28th July, 1876, for value,
to David A. Gage, the assignment providing that Gage was
to protect Reeve against the McMullen claim, McDonald and
Whitcomb, and the rights and claim of defendant, and against
all costs.

That about October 23, 1876, this court was about to proceed
with the hearing of the objections to the master's report, and
the defendant being notified thereof went to the court and
stated that he no longer represented Reeve, and suggested a
continuance until he could notify Reeve or his friends.    The
hearing being continued the defendant wrote to Gage, who
he supposed could reach Reeve, stating the action of the court.
That on the 25th of October, 1876, Gage came to defendant,
said he had purchased Reeve's claim, exhibited the assign-
ment thereof, and offered to assign the defendant one-half of
the claim in payment of his services in and about the prosecu-
tion of the claim, which offer defendant accepted.    That
thereupon by authority of said assignment to him (said Gage),
and in consideration of such services, Gage assigned defendant
an undivided half interest of the claim.    That about two
weeks after the assignment, defendant met Reeve on the street,
told him he had seen the assignment, and that Gage had
assigned him one-half of the claim.    That Reeve replied, he
did not care what Gage did, he was going for the telegraph
lines.    That thereafter Reeve paid no attention to said claim,
nor did he thereafter communicate with said Sutherland.    That
defendant, on May 31, 1879, purchased for value from the
said McMullen Brothers, all their title and interest in the
claim, and obtained for value, an assignment of the agreement
between them and Reeve; also that defendant purchased and
owned the claim of McDonald & Whitcomb against Reeve.

Alleges that by the purchase from Gage, in 1876, of an un-
divided half, and of the McMullen interest in May, 1879, he
became the owner of all said claim.

Sutherland v. Reeve.

Defendant alleges that September, 1878, Gage was adjudged a bankrupt, and one Mason B. Carpenter was appointed assignee, and that Gage conveyed to him all his property, including the interest in this claim.  That on August 1, 1879, from Carpenter, assignee, in pursuance of petition filed and orders thereon, of the United States District Court at Denver, Colorado, he purchased for a valuable consideration all the interest of said Reeve in said claim, and received from said assignee a deed of assignment thereof.  That Gage well knew of the bankruptcy proceedings, and acquiesced, advised and consented thereto.  That on the 9th of August, 1879, defendant mailed a letter to Reeve, duly registered, which Reeve refused to receive.  That on or about the 12th of August, 1879, he caused to be served on said Reeve a copy of said letter, by the sheriff at Cuyahoga Falls, Ohio.  That although Reeve knew by said copy that defendant was asserting ownership of said claim, based largely, if not entirely, on said assignment to Gage, he never made any protest or objection, or communicated with defendant concerning the same.  That believing himself to be the owner, he spent much money and labor in the prosecution of the claim, and finally succeeded in obtaining a decree allowing the same, the same to be paid to him, said defendant.  That since July, 1876, both Gage and Reeve considered the claim as of but little, if of any, value, until within a year past.  That practically all of the value has resulted from defendant's labors and services.  The doctrine of *laches* is invoked and relied upon as a complete defense.  An amendment to the answer sets up the statute of limitations of five years as a bar, and alleges that Reeve was not the owner of the claim at time suit was brought, having assigned the same or parts thereof to his son and other persons, and that defendant has assigned an interest in the claim to other persons, but to whom does not state.

I have stated the proceedings at length, for the reason that I have arrived at the conclusion that except for two disputed facts this case might be decided upon petition and sworn answer.  Those two facts are, first, whether or not, after May, 1875, the defendant was or acted as the solicitor of

Reeve in the prosecution of this claim; and second, did Reeve make the assignment in 1876 of this claim in question to Gage in trust, and for the purposes alleged in the petition.

I desire to say as little as possible in deciding this case. It is always a disagreeable duty for a court to pass upon any question in which a solicitor of the court appears to be involved professionally; and I know also that a solicitor's reputation responds more sensitively to attack than any other, except, possibly, a woman's. I shall take up the question first, of Reeve's assignment to Gage.

I find from the evidence that the assignment to Gage was without consideration, was in trust, and for the purposes alleged in the petition. The defendant claims title through Gage, except as to one undivided 52½ per cent thereof, to which he claims an independent title by purchase from Mc-Mullen Bros. The McMullen claim was purchased by him after the assignment by Reeve to Gage, and before the purchase by defendant of Gage's assignee in bankruptcy. If the defendant was not Reeve's solicitor he was certainly Gage's. If defendant, while acting as Reeve's solicitor, derived knowledge of the McMullen claim, and neither Reeve nor Gage had notice of the purchase of McMullen's interest by defendant until after it was purchased, which the evidence shows to be the fact, it needs no citation of authority to show that a solicitor can not secretly purchase the subject-matter in litigation or any interest therein, and hold it adversely to his client. It was a voidable purchase either as to Gage or as to Reeve. Weeks on Attorneys, 222 and 465; Gibbons v. Hoag, 95 Ill. 45.

If he does so purchase, he will be held to be a trustee for his client as to the property or interest so purchased. The purchase of the subject-matter of litigations is forbidden as against public policy and because it places the solicitor under temptation to be unfaithful to his trust. There was a *quasi* lien of one McDonald and Whitcomb purchased by defendant. What has been said of the McMullen purchase will equally well apply to that purchase. If defendant's title through the McMullen Bros. and the McDonald and Whitcomb purchase was not good as against Gage, it could not be good against

Reeve, as I have found Gage held only in trust for Reeve. In a court of equity, a *cestui que use* may avail himself of all the defenses of which the trustee could.

This brings me to the consideration of defendant's claim of title derived from or through Gage. He claims to have received an assignment of an undivided half from Gage in 1876, and of all Gage's title remaining in him by deed of the assignee in bankruptcy in 1879. The petition alleges a transfer to Sutherland of the assignment made to Gage; that this took place in 1879, at Denver. The defendant denies this, but admits he did obtain, by Gage's consent, from Gage's assignee in bankruptcy, an assignment of all of Gage's interest. I am of the opinion from the evidence that Gage did assign the original assignment from Reeve to him over to Sutherland at that time. But whether Sutherland thus acquired Gage's title or whether he acquired it through the deed or transfer of the assignee in bankruptcy is immaterial. In either case he could only acquire such interest as Gage had, or in other words, in either event, he took subject to all the equities between Gage and Reeve.

The defendant bases his claim of title upon the agreement of McMullen and the assignment of Gage, and claims that he had a right to buy such titles as those instruments purported to convey. In other words, he claims to be a *bona fide* purchaser for value, without notice of equities, from both McMullen and Gage's assignee in bankruptcy. The defendant is mistaken in his law. There is no place for the doctrine of *bona fide* purchase for value without notice, in the transfer of such a chose in action. Not only does any purchaser of a chose in' action, of this character, take it subject to all equities of the original parties to the chose in action, but a second or subsequent assignee takes it subject to all equities existing between any prior assignor and assignee. The doctrine is clearly enunciated in Pomeroy, Equity Jurisprudence, Secs. 703, 704, 707, 708, 709, 710, 711, 918, and note. Independent of the foregoing, and without regard to the question as to alleged frauds and misrepresentations, I could not, upon the evidence, sustain the purchase from Gage at Denver, in 1879.

It appears from Sutherland's own testimony that Gage, when
he made his assignment, did not schedule this claim; that when
Sutherland arrived at Denver and ascertained this fact, he,
after some negotiations with Gage, got Gage's and the as-
signee's consent to file a petition for the sale of this claim,
stating the fact that it was omitted because it was considered
as of little or no value; that such a petition was filed and the
necessary proceedings were taken therein and Sutherland was
declared to be the purchaser for the sum of ten dollars.    Gage
and the assignee swore that it was omitted from the first
schedule because he told the assignee that it was a matter that
did not belong to him; that he held it in trust; and they both
swore that they told Sutherland the same thing, or rather
that Mr. Gage told Sutherland the same thing.

According to defendant's own evidence, in order to induce
Gage to sell or consent to a sale of his interest, he insisted to
Gage that having purchased McMullen's $52\frac{1}{2}$ per cent interest,
and having a contract with Gage for one-half of claim for
services as attorney, he, Sutherland, in fact owned the whole
claim.    He used this purchase from McMullen as a club to
induce Gage to consent to a sale of his interest in the claim
for the nominal sum of ten dollars, when it was his duty to
advise Gage that the law made him a trustee of the McMullen
agreement for the benefit of the owner of the claim, and also
to advise Gage of the liability of the stockholders and the
real value of the claim.    Concealment under such circum-
stances will vitiate a transaction as much as misrepresentation
or actual fraud.

The defendant sets up as a defense the statute of limitations
in bringing this suit, and of *laches*.

It appears that in 1875 the complainant and defendant quar-
reled; they quarreled because Sutherland demanded of him
an assignment of the one-half interest, according to his under-
standing of the original agreement, and defendant filed a bill
against the complainant to establish a lien for his fees.    Com-
plainant, June, 1875, filed in the Circuit Court a written
discharge of defendant from the case.    This discharge came
to defendant's notice within a day or two.    He still continued

to appear and act as petitioner's solicitor, and is the solicitor of record to this date.    Defendant relies on the discharge filed as absolving him from the relation of solicitor to Reeve; he gives his reasons for continuing to appear of record, which were, first, that after he was discharged by the filing of the written discharge he desired to protect his own interest in the claim, and having his bill pending for the establishment of his lien he continued to act until that was dismissed, and that he did not act from that time up to the employment by Mr. Gage in 1876, and that from 1876 on, until his purchase from Mr. Gage in 1879, he acted for Gage, and after 1879, for himself; although, it being a chose in action, Reeve being a defendant, he allowed the record to stand as the claim of Reeve, and contented himself with obtaining the order of August 7, 1879, that the claim be prosecuted in Reeve's name for his own benefit.

The defendant sets up as a defense the statute of limitations of five years and the equitable defense of *laches* in bringing this suit.    It is sufficient to say, that this is an attack upon a decree or order of this court obtained without notice to the petitioner and under circumstances which, it is alleged, amounted to a fraud.    A judgment obtained by fraud is not only a fraud upon the party, but upon the court.    The statute of limitations in cases of this nature is applied in equity only by analogy to the limitations at law, and a court of equity will not apply the law statute where it would be inequitable to do so.    The proceeding or suit in which the order and decree, interlocutory in their nature, was obtained, is still pending, and the obtaining of the same without notice to Reeve, was an imposition on the court.    The defense of the statute of limitations has no standing in the case for that reason, as well as for the reason that Sutherland holds whatever title he obtained from Gage upon the same trusts that Gage held it.

The equitable defense of *laches* in insisted upon.    It is insisted that in August, 1879, Sutherland caused a notice to be served upon Reeve that he had become the exclusive owner by purchase, sale and assignment of the whole of his claim;

which claim was, in the year 1876, wholly sold, assigned and transferred and set over to David A. Gage and that he, Sutherland, had obtained an order to prosecute the accounting then being carried on in court on said claim be prosecuted for his, Sutherland's, benefit. It might well be asked if in 1876, as Sutherland alleges, he believed Gage to be the absolute owner of said claim, and if he had no notice that Gage held as trustee for Reeve at the time of the purchase of Gage or his assignee at Denver, in 1879, why did he deem it necessary to give any such notice to Reeve?

The defendant, Reeve, denies the receipt of any such notice or even knowledge of the matters contained therein, until May, 1888. There is some evidence that he had notice in 1882, of some kind, as to an assignment by Gage, but I will refer to that hereafter.

The evidence is very conflicting as to the service of the notice in 1879, and I do not deem it necessary to decide whether such notice was served or not.

The defense of *laches* by reason of lapse of time and inaction of the party seeking relief, will not be permitted where the party was in ignorance of the material facts connected with the transaction which is attacked, or of his rights in relation thereto. If the notice was intended to be a basis for the commencement of the running of time upon which the doctrine of *laches* is based, he should have notified Reeve of the purchase of the McMullen and of the McDonald and Whitcomb claims, of the manner in which such purchases were wrongfully used to induce Gage to consent to the purchase by Sutherland, made in Denver, of his interest of the Reeve claim, and to give his guaranty concerning the same in 1879 (the consideration for the Reeve claim being $10), and that it was represented by Sutherland that the Gage interest was absolutely of no value. The notice should have also disclosed the fact that in Sutherland's judgment the claim was of great value because of the liability of the stockholders of the Great Western Telegraph Company.

The petitioner, Reeve, alleges as a reason for his delay and apparent neglect of the claim, that he never knew until 1888

Sutherland v. Reeve.

that there was any liability to the full amount of the stock on the part of the stockholders of the Great Western Telegraph Company, and that Sutherland never advised him to that effect, but studiously concealed from him that there was such a liability. Reeve alleges also as excuse for his inaction and apparent abandonment of interest in the case, that he rested quiet because he believed Sutherland, under his retainer, to be paid out of the proceeds, would collect the claim; that he knew he was trying to do so and that Sutherland led him to believe that the only money that could be realized would be from the tangible property and from some unpaid portion of the thirty per cent, for which the stock was sold. Also, that hearing that the tangible property was sold for $15,000, he supposed the claim of but very little value after payment of costs and Sutherland's fees. The evidence sustains, in my opinion, this contention of Reeve's. I have looked over the evidence carefully to see if Sutherland, when on the stand, swore that he did give either Reeve or Gage his opinion that this liability of stockholders for the full amount of their stock existed, and I find no evidence of his to that effect. Nor will the answer under oath, avail the defendant in this regard. The answer, while being particular to deny as to almost all matters the allegations of the bill, by repeating and denying the same, word for word, does not, at least in this particular, meet the requirements of an answer under oath. This bill demanded a direct affirmance or denial as to whether he did give Reeve an opinion and information as to the liability of the stockholders. I do not mean a demand in words, but the spirit of the charge necessitated such an answer on that point, if it was to be used as a defense requiring the evidence of two witnesses, or of one with corroborative circumstances, to overcome it. The denial is that he ever withheld from Reeve any facts touching the liability of the stockholders. He might have given all the facts to Reeve, and Reeve still be as ignorant as before as to such liability. Reeve's delay, inaction and failure to communicate with Sutherland, or to take any particular interest in the prosecution of the claim, may be accounted for if he thought the

claim of little and probably of no value after the payment of solicitor's fees and costs, when it might not be reasonable conduct in one who knew or had been advised of the stockholders' liability, and that with proper effort the whole of the claim allowed in 1879, for over $154,000, might be collected with interest. An abandonment of a claim of such a large amount to one who had paid almost nothing for it, an acquiescence that Sutherland should have and retain a claim of such magnitude—all the facts being known to him, Reeve—and knowing his rights in the premises, would hardly seem consistent with the sanity of the petitioner.

The only remaining question in this case is as to defendant's rights to an undivided half of this claim by virtue of an assignment made in 1876, by David A. Gage, very soon after he received the assignment from Reeve. The consideration was the services theretofore rendered in the prosecution of this claim, and to be thereafter rendered.

I find myself embarrassed by the pleadings in this case. The petition does not attack this assignment, although it was distinctly set up, and relied upon in the answer, as having been made under the authority conferred by the assignment to Gage. Under the pleadings in this case I am only authorized to inquire whether it was made by Gage, and did he have the authority to make it. I am not authorized to inquire whether it was obtained by undue influence, by fraud, or even whether the fee is an extortionate one, for the reason that no such attack is made on it by petition. If petitioner wished to attack it upon any of these grounds he should have amended his petition. He did ask leave to do so on the hearing, but it appearing that Gage was dead, such leave was refused. Agreements of this nature between attorneys and clients have been sustained by our Supreme Court when fairly made, and under proper conditions. Gage's signature being to the assignment the only question is, had Gage power to make the agreement to give one-half for Sutherland's services rendered, and to be rendered. The assignment to Gage is absolute on its face, and in express words gave Gage power " to litigate or adjust the claim as he saw fit."

In the absence of any attack on Gage or Sutherland as to the fairness of the transaction, and as it is not forbidden by our law that such a contract be made between solicitor and client, I can only inquire as to the fact of making the same and Gage's right to make it. The assignment to Gage gives a broad power and control to Gage over the claim and over the litigation of it, and I am of the opinion that it was sufficient authority to Gage to make the agreement with Sutherland.

Reeve was in Chicago for about two years thereafter, and I am inclined to the opinion from the evidence, that he knew Gage had made this arrangement. There is evidence tending to show that about two weeks after it was made Sutherland met Reeve on the street, and some words passed, either as to Gage having assigned, or as to his being willing to assign one-half interest to Sutherland.

As Gage was then in Chicago, it would have been only natural that Reeve should then have inquired of the matter. There is also an undisputed letter of Reeve's to Culver in 1882, which refers to the fact that Gage had made an assignment. This might be equally applicable to the assignment of the one-half in 1876 as to that made in 1879. What Culver affirms that Reeve told him at that time is explicitly denied by Reeve. The defendant has spent considerable money and years of professional labor in prosecuting this claim, relying certainly for a number of years on the assignment of 1876.

Upon the pleadings and also upon the evidence I sustain defendant's title to the undivided half under the agreement (or assignment) of 1876.

I have disposed of this case without feeling called upon to decide whether after June, 1875, Mr. Sutherland was Reeve's solicitor. I shall only say that Mr. Sutherland appeared continuously from that date, and even now appears of record as solicitor for Reeve. He, however, contends that from the date of Reeve filing his discharge in court, June, 1875, until October, 1876, when Gage made the assignment of one-half of the claim, he only appeared to protect his own interest, and after October, 1876, to his last purchase in 1879, he

appeared in the interest of Gage, and since then in his own interest. This contention may be true, and I am not prepared to say on the evidence and certainly not desirous to hold, that Mr. Sutherland intended, after June, 1875, to act for or on behalf of Selah Reeve as his solicitor, or supposed he was guilty of any unprofessional conduct toward him.

The mistake he has made has been in endeavoring, while connected with the prosecution of the claim, to acquire the ownership of the subject-matter of litigation, and in supposing that he could occupy the position of a *bona fide* purchaser without notice of a chose in action of this character.

There must be an accounting as to what moneys have been paid by Sutherland to the McMullens, to McDonald and Whitcomb and to the assignee in bankruptcy of Gage, for their respective interests or liens, and for the expenses and costs of the prosecution of the Reeve claim, also of the moneys received by Sutherland on behalf of said claim. The decree may provide for setting aside the order and so much of the decree as finds and decrees that Sutherland is the owner of the claim and that it be prosecuted for his benefit; and that the court, upon the issues herein, finds and decrees that Sutherland is entitled to the undivided half, and has an interest in said claim only to the extent and upon the terms and conditions of the assignment of Gage to him, May or October, 1876. That the petitioner, Selah Reeve, is entitled to remainder of said claim and proceeds thereof, and that a reference be had to a master to take such accounting, and the question of costs and all other matters be reserved until the coming in of the master's report, and for further directions."

Upon a careful consideration of the arguments contained in the briefs of counsel and a thorough and painstaking examination of the record, we have reached the conclusion that the issues made by the pleadings, the findings from the evidence, and the legal principles governing the rights of the parties, are correctly stated in the foregoing opinion. Assuming that appellant's contention that the case was improperly consolidated with what is known as the Terwilliger case is true, such order in no way injured appellant. The case proceeded

to decree as an independent suit, and the order of consolidation had no effect whatever on the result.

The case turns principally and almost wholly on the relation which appellant sustained to Reeve or the Reeve interest on the records of the court.

We affirm the decree of the court below; not on the ground that appellant committed any actual fraud or intentional wrong in procuring an interest in the subject-matter of the litigation, which was adverse to Reeve. Appellant regarded his relations with Reeve as in fact severed, and that he owed him no further duty, and the facts were cogent to justify such a moral conclusion on his part.

He was mistaken, however, as to the legal consequence of his never formally changing the relation by which he was connected with Reeve upon the record. He, in legal effect, declined to be discharged as Reeve's solicitor, but persisted in holding the place which he originally obtained in the suit by Reeve's employment and with Reeve's consent.

He continued from beginning to end to be Reeve's solicitor on the record, and the evidence shows, though appellant may not in fact have known it, that the interest he was prosecuting was Reeve's interest.

*Decree affirmed.*