# PATTERSON LAND COMPANY v. GEORGE W. LYNN.

### (147 N. W. 256.)

**Plaintiff must recover on strength of own title — deed from county — good against world — excepting former fee owner — validity — sufficient to support this action.**

1. Plaintiff must recover upon the strength of its own title, but in the case at bar such title is shown by a deed from Emmons county, fair upon its face, and good against all the world excepting the former fee owners. The defendant not being in a position to attack the validity of the plaintiff's title, it is sufficient to support this action.

**Evidence — deeds from county — no fraud shown.**

2. Evidence examined, and *held* that there was no fraud in the transactions by which plaintiff obtained the deeds from Emmons county.

**Decree — attack — quieting title.**

3. Defendant was never in a position to attack decree obtained by the plaintiff's grantor, quieting title in the lands.

**State's attorney — duty to county — antagonistic claims — buying — acts after term — estoppel — trust — violation — fraud — need not be shown — presumption.**

4. Defendant, as state's attorney of Emmons county, owed a duty to the county to perfect its title to the lands in suit, and he is estopped, even after his term of office is expired, to buy antagonistic titles and assert ownership in the lands against the county or its grantee. Actual fraud need not be shown, nor any intentional violation of trust. It may be conceded that defendant acted in an honest, though mistaken, belief that he had a right to buy the outstanding titles. The law says that he must not buy, and if he does so it will be conclusively presumed that he purchased for the county.

**Evidence — attorney and client — relation of.**

5. Evidence examined, and *held* that while the relation of attorney and client may not have existed between defendant and plaintiff's grantor, still the circumstance related in the opinion tends to strengthen the conclusion reached in the foregoing paragraph.

**Stipulations — fraud upon court — void.**

6. Certain stipulations between the plaintiff and defendant in a former action, examined, and *held* to be a fraud upon the court, and are therefore set aside.

**Fee owner — title — taxes — lien — estoppel.**

7. Defendant's correspondence with the former fee owners examined, and *held* that defendant was endeavoring to obtain what he considered perfect title to the land, subject only to the lien of the taxes, under the Wood law, but that he was estopped from acquiring such a title.

**Involuntary trustee — for benefit of county.**

8. The defendant is an involuntary trustee for the benefit of Emmons county and its grantors.

**Mortgages — by former fee owner — foreclosure — title.**

9. Two of the quarter-sections involved in the litigation were acquired by defendant through the foreclosure of mortgages given by the former fee owners. *Held*, that it does not change the situation in any particular.

**Complaint — amendments offered — rejection — error.**

10. Certain amendments to the complaint considered, and *held* they were improperly rejected by the trial court. Judgment entered ordering the defendant to convey the lands to plaintiff upon the payment of his costs incident to obtaining title and for improvements and taxes, if any, paid by him.

Opinion filed March 6, 1914.   Rehearing denied April 11, 1914.

Appeal from district Court of Emmons County, *Winchester,* J. Reversed.

*Watson & Young,* for appellant, and *Durment, Moore, & Oppenheimer,* and *Ashley Coffman,* of counsel.

A state's attorney of a county, having been its legal adviser, and especially in the matter of the county acquiring title to lands, and later in quieting the title, is estopped to acquire or assert an interest in such lands adverse to the county or to its grantees, and any interest he may have acquired is for their benefit. 4 Cyc. 958; 3 Am. & Eng. Enc. Law, 344, 2d ed.; Weeks, Attorneys at Law, 2d ed. § 121; Yerkes v. Crum, 2 N. D. 72, 49 N. W. 422.

In some cases this rule has been relaxed, so that where an attorney so acts, the transaction is presumed to be fraudulent, and the burden rests upon the attorney to establish the fairness, adequacy, and equity of the transaction. Bingham v. Salene, 15 Or. 208, 3 Am. St. Rep. 152, 14

Pac. 523; Dunn v. Dunn, 42 N. J. Eq. 431, 7 Atl. 842; Cowee v. Cornell, 75 N. Y. 100, 31 Am. Rep. 428; Nesbit v. Lockman, 34 N. Y. 167; Re Freerks, 11 N. D. 120, 90 N. W. 265; Weeks, Attorneys at Law, § 271; Rev. Codes 1899, § 427; Henry v. Raiman, 25 Pa. 354, 64 Am. Dec. 703; Reid v. Stanley, 6 Watts & S. 376; Baker v. Humphrey, 101 U. S. 494, 25 L. ed. 1065; May v. Le Claire, 11 Wall. 217, 20 L. ed. 50; Galbraith v. Elder, 8 Watts, 81; Smith v. Brotherline, 62 Pa. 461; Hoopes v. Burnett, 26 Miss. 428; Jett v. Hempstead, 25 Ark. 462; Fox v. Cooper, 2 Q. B. 937, 6 Jur. 128; Taylor v. Blacklow, 3 Bing. N. C. 235, 3 Scott, 614, 2 Hodges, 224, 6 L. J. C. P. N. S. 14.

An attorney in the employ of another cannot buy and hold property in which his client is interested, otherwise than in trust, where his employment relates to such property. Smith v. Brotherline, 62 Pa. 461; Davis v. Smith, 43 Vt. 269; Wheeler v. Willard, 44 Vt. 641; Giddings v. Eastman, 5 Paige, 561; Moore v. Bracken, 27 Ill. 23; Harper v. Perry, 28 Iowa, 57; Hockenbury v. Carlisle, 5 Watts & S. 348; Hobday v. Peters, 6 Jur. N. S. 754, 28 Beav. 349, 29 L. J. Ch. N. S. 780, 2 L. T. N. S. 590, 8 Week. Rep. 512; Jett v. Hempstead, 25 Ark. 462; Case v. Carroll, 35 N. Y. 385; Lewis v. Hillman, 3 H. L. Cas. 607.

*Actual fraud* is not necessary in such case to give the client redress. A *breach of duty* is constructive fraud, and is sufficient. Story, Eq. Jur. §§ 258, 311; Sanford v. Flint, 108 Minn. 399, 122 N. W. 315; Doster v. Scully, 27 Fed. 782.

An attorney employed to prepare a deed for land, or consulted in relation to the same and to the title, is precluded from buying in, for his own use, any outstanding title. Smith v. Brotherline, 62 Pa. 461; Galbraith v. Elder, 8 Watts, 94; Cleavinger v. Reimen, 3 Watts & S. 486; Henry v. Raiman, 25 Pa. 354, 64 Am. Dec. 703; Downard v. Hadley, 116 Ind. 131, 18 N. E. 457; 1 Perry, Tr. & Trustees, § 166; Gibbons v. Hoag, 95 Ill. 45; Ainsworth v. Harding, 22 Idaho, 645, 128 Pac. 92; Davis v. Kline, 96 Mo. 401, 2 L.R.A. 78, 9 S. W. 724; Ringo v. Binns, 10 Pet. 269, 280, 9 L. ed. 420, 425; United States v. Costen, 38 Fed. 24; Re Boone, 83 Fed. 944; Phillips v. Blair, 38 Iowa, 653; Larey v. Baker, 86 Ga. 468, 12 S. E. 684; Carter v. Palmer, 8 Clark & F. 657, 11 Bligh. N. R. 397; Kennedy v. Redwine, 59

Ga. 327; Hatton v. Robinson, 14 Pick. 416, 25 Am. Dec. 415; Wade v. Pettibone, 11 Ohio, 57, 37 Am. Dec. 408; Briggs v. Hodgdon, 78 Me. 514, 7 Atl. 387; Turley v. Turley, 85 Tenn. 251, 1 S. W. 891; Emil Kiewert Co. v. Juneau, 24 C. C. A. 294, 47 U. S. App. 394, 78 Fed. 708; Garinger v. Palmer, 61 C. C. A. 436, 126 Fed. 906; 11 Cyc. 647.

Actual fraud on the part of the attorney need not be shown. From the relation of attorney and client, it is presumed. Weeks, Attorneys at Law, 2d ed. § 258; Yerkes v. Crum, 2 N. D. 72, 49 N. W. 422; Perry, Tr. & Trustees, 6th ed. § 202; Gilbert v. Hewetson, 79 Minn. 326, 79 Am. St. Rep. 486, 82 N. W. 655; St. Paul Trust Co. v. Strong, 85 Minn. 1, 88 N. W. 256; Henry v. Raiman, 25 Pa. 354, 64 Am. Dec. 703; Baker v. Humphrey, 101 U. S. 494, 25 L. ed. 1065; Downard v. Hadley, 116 Ind. 131, 18 N. E. 457.

When attacked, the burden rests with the attorney to show good faith. Weeks, Attorneys at Law, 2d ed. § 258; Cunningham v. Jones, 37 Kan. 477, 1 Am. St. Rep. 257, 15 Pac. 572; Shropshire v. Ryan, 111 Iowa, 677, 82 N. W. 1035; Home Invest. Co. v. Strange, — Tex. Civ. App. —, 152 S. W. 510; Standwood v. Wishard, 128 Fed. 499; Trice v. Comstock, 61 L.R.A. 176, 57 C. C. A. 646, 121 Fed. 620.

The state's attorney, having represented to a purchaser of lands from his county that the title was good, cannot, in a suit involving such lands, falsify such representations; and he is estopped to acquire any title adverse to the title granted by his county to such purchaser. Rev. Codes, 1905, § 7316; Herman, Estoppel, §§ 730, 911; 16 Cyc. 680, 683; Dickerson v. Colgrove, 100 U. S. 578, 25 L. ed. 618; Sedgw. & W. Trial of Title to Land; Doster v. Scully, 27 Fed. 782; Gibbons v. Hoag, 95 Ill. 45; Bacon v. Bronson, 7 Johns. Ch. 194, 11 Am. Dec. 449; 11 Cyc. 699; Bigelow, Estoppel, 5th ed. 570.

Defendant was forbidden by statute and by common law to obtain quitclaim deeds to the property in question, or to attempt to enforce the same. N. D. Rev. Codes 1905; Penal Codes 1877, §§ 195, 200, Rev. Codes 1899, §§ 7008, 7013; 4 Kent, Com. 12th ed. 446; Gammons v. Johnson, 76 Minn. 76, 78 N. W. 1035; Steere v. Steere, 5 Johns. Ch. 1, 9 Am. Dec. 256; Browning v. Marvin, 100 N. Y. 148, 2 N. E. 635; Wetmore v. Hegeman, 88 N. Y. 73; Baldwin v.

Latson, 2 Barb. Ch. 306; Winterberg v. Van de Vorste, 19 N. D. 417, 122 N. W. 866; Higbee v. Daeley, 15 N. D. 339, 109 N. W. 318.

The deeds to the attorney, having been obtained from persons who had abandoned the land, and had failed for years to pay the taxes, conveyed no title or interest. Cotton v. Horton, 22 N. D. 1, 132 N. W. 225; Higbee v. Daeley, 15 N. D. 339, 109 N. W. 318; Bausman v. Faue, 45 Minn. 418, 48 N. W. 13; Johnson v. Erlandson, 14 N. D. 518, 105 N. W. 722; Shelby v. Bowden, 16 S. D. 531, 94 N. W. 416; Farr v. Semmler, 24 S. D. 290, 123 N. W. 835; Ford v. Ford, 24 S. D. 644, 124 N. W. 1108; 16 Cyc. 718, 11 Am. & Eng. Enc. Law, 394; Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495; Pom. Eq. Jur. 802.

The deeds so obtained were champertous and void. Schneller v. Plankinton, 12 N. D. 561, 98 N. W. 77; Galbraith v. Payne, 12 N. D. 164, 96 N. W. 258; Burke v. Scharf, 19 N. D. 227, 124 N. W. 79.

Under such circumstances a court of equity will not aid the attorney in carrying out his scheme. Cotton v. Horton, 22 N. D. 1, 132 N. W. 225; Mahon v. Leech, 11 N. D. 181, 90 N. W. 807; Holgate v. Eaton, 116 U. S. 33, 29 L. ed. 538, 6 Sup. Ct. Rep. 224; O'Fallon v. Kennerly, 45 Mo. 124; Spoonheim v. Spoonheim, 14 N. D. 380, 104 N. W. 845; Wadge v. Kittleson, 12 N. D. 452, 97 N. W. 856.

The attorney, having obtained the deeds by representing to the grantors that they were for the benefit of the record owners, became an involuntary trustee for this plaintiff, the record owner, of such title as he received. Rev. Codes 1905, § 5711; Perry, Tr. & Trustees, 181; Prondzinski v. Garbutt, 8 N. D. 191, 77 N. W. 1012; Gates v. Kelley, 15 N. D. 639, 110 N. W. 770; Yerkes v. Crum, 2 N. D. 77, 49 N. W. 422; Henry v. Raiman, 25 Pa. 354, 64 Am. Dec. 703; Baker v. Humphrey, 101 U. S. 494, 25 L. ed. 1065; Downard v. Hadley, 116 Ind. 131, 18 N. E. 457; Sutherland v. Reeve, 41 Ill. App. 295; Ainsworth v. Harding, 22 Idaho, 645, 128 Pac. 92; Winterberg v. Van de Vorste, 19 N. D. 417, 122 N. W. 866; Boschker v. Van Beek, 19 N. D. 104, 122 N. W. 338; Johnson v. Knappe, 24 S. D. 407, 123 N. W. 857; Rollins v. Mitchell, 52 Minn. 41, 38 Am. St. Rep. 519, 53 N. W. 1020.

Appellants have title to these lands through decrees regularly entered against the former owners, and the deeds to the attorney conveyed no

title. Rev. Codes 1899, § 5249; Star v. Mahan, 4 Dak. 213, 30 N. W. 169; Foster v. Wood, 30 How. Pr. 284; W. W. Kimball Co. v. Brown, 73 Minn. 167, 75 N. W. 1043; 1 Black, Judgm. 2d ed. p. 334; Scarborough v. Myrick, 47 Neb. 794, 66 N. W. 867; Wilkins v. Wilkins, 26 Neb. 235, 41 N. W. 1101; Hume v. Conduitt, 76 Ind. 598; Isaacs v. Price, 2 Dill. 347, Fed. Cas. No. 7,097; Salter v. Hilgen, 40 Wis. 363; Van Wyck v. Hardy, 20 How. Pr. 222; Briggs v. Hodgdon, 78 Me. 514, 7 Atl. 387; Pike v. Galvin, 29 Me. 183; Crocker v. Pierce, 31 Me. 177; Crayton v. Spullock, 87 Ga. 326, 13 S. E. 561; Gooch v. Peebles, 105 N. C. 411, 11 S. E. 415; Weeks, Attorneys at Law, §§ 271 et seq.; Zeigler v. Hughes, 55 Ill. 288.

The judgments entered in favor of this attorney, conveying the lands here involved, are void and unenforceable because of the deceit and fraud practised by the attorney, and are no bar to this action. Rev. Codes 1905, ¶ 2, §§ 500, 5293, 5294; 1 Herman, Estoppel, §§ 226, 250, 391; 3 Dan. Ch. Pl. & Pr. Perkins's ed. 1843; 2 Pom. Eq. Jur. § 919; 1 High, Inj. 2d ed. §§ 112, 281; 1 Foster, Fed. Pr. 2d ed. §§ 358, 678; Wright v. Miller, 1 Sandf. Ch. 103; Barnesly v. Powel, 1 Ves. Sr. 120, 289; Livingston v. Hubbs, 2 Johns. Ch. 124; Loomer v. Wheelwright, 3 Sandf. Ch. 135; Glover v. Hedges, 1 N. J. Eq. 113; Standen v. Edwards, 1 Ves. Jr. 133, 1 Madd. Ch. 236; Vanmeter v. Jones, 3 N. J. Eq. 523; Gifford v. Thorn, 9 N. J. Eq. 703; Whittemore v. Coster, 4 N. J. Eq. 438, 41 Am. Dec. 740; Boulton v. Scott, 3 N. J. Eq. 231; 2 Bl. Com. 346; 2 Hargrave's Juridical Arguments, 392; McKenzie v. Stewart, Dom. Proc. 1754; Cruise Dig. title 33; Private Act, 50, 51; Mussel v. Morgan, 3 Bro. Ch. 74; Richmond v. Tayleur, 1 P. Wms. 734; Lloyd v. Mansell, 2 P. Wms. 74; Whitchurch v. Whitchurch, 2 P. Wms. 236; Vanmeter v. Jones, 3 N. J. Eq. 520; Doughty v. Doughty, 27 N. J. Eq. 315; Cairo & F. R. Co. v. Titus, 28 N. J. Eq. 269; Jewett v. Dringer, 31 N. J. Eq. 586; Byers v. Surget, 19 How. 303, 15 L. ed. 670; Johnson v. Waters, 111 U. S. 640, 667, 28 L. ed. 547, 556, 4 Sup. Ct. Rep. 619; Story, Eq. Jur. §§ 887, 1570, 1573, 1574; Kerr, Fr. & Mistake, 352, 353; Gaines v. Fuentes, 92 U. S. 10, 23 L. ed. 524; Barrow v. Hunton, 99 U. S. 80, 25 L. ed. 407; Arrowsmith v. Gleason, 129 U. S. 86, 32 L. ed. 630, 9 Sup. Ct. Rep. 237; Reigal v. Wood, 1 Johns. Ch. 402; United States v. Throckmorton, 98 U. S. 61, 65, 25 L. ed. 93, 95; Marshall v. Holmes, 141 U. S. 589,

596, 35 L. ed. 870, 872, 12 Sup. Ct. Rep. 62; Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 336, 3 L. ed. 362, 363; Hendrickson v. Hinckley, 17 How. 443, 15 L. ed. 123; Crim v. Handley, 94 U. S. 652, 653, 24 L. ed. 216; Metcalf v. Williams, 104 U. S. 93, 96, 26 L. ed. 665, 666; Embry v. Palmer, 107 U. S. 3, 11, 27 L. ed. 346, 349, 2 Sup. Ct. Rep. 25; Knox County v. Harshman, 133 U. S. 152, 154, 33 L. ed. 586, 587, 10 Sup. Ct. Rep. 257; Floyd v. Jayne, 6 Johns. Ch. 482; Beard v. Campbell, 2 A. K. Marsh. 125, 12 Am. Dec. 364; Waters v. Mattingly, 1 Bibb, 244, 4 Am. Dec. 632; Gjerstadengen v. Hartzell, 8 N. D. 424, 79 N. W. 872; Wayland v. Tysen, 45 N. Y. 281; Parsons v. Weis, 144 Cal. 410, 77 Pac. 1007; Aldrich v. Barton, 138 Cal. 220, 94 Am. St. Rep. 43, 71 Pac. 169; Sohler v. Sohler, 135 Cal. 323, 87 Am. St. Rep. 98, 67 Pac. 282; Silva v. Santos, 138 Cal. 536, 71 Pac. 703; Michigan v. Phoenix Bank, 33 N. Y. 9; Lloyd v. Mansell, 2 P. Wms. 74; Kennedy v. Daily, 6 Watts, 269; Van Cortland v. Underhill, 17 Johns. 405; Davis v. Tileston, 6 How. 114, 12 L. ed. 366; Bulkley v. Starr, 2 Day, 552; Fenemore v. United States, 3 Dall. 357, 1 L. ed. 634; Willson v. Foree, 6 Johns. 110, 5 Am. Dec. 195; Jackson ex dem. Tracy v. Hayner, 12 Johns. 469; Barber v. Kerr, 3 Barb. 150; Clark v. Underwood, 17 Barb. 202; Wright v. Miller, 8 N. Y. 9, 59 Am. Dec. 438; Weed v. Bentley, 6 Hill, 56; Dobson v. Pearce, 12 N. Y. 156, 62 Am. Dec. 152; Reed v. Harvey, 23 Ark. 44; Hayden v. Hayden, 46 Cal. 333; Shinkle v. Letcher, 47 Ill. 217; Taylor v. Nashville & C. R. Co. 86 Tenn. 228, 6 S. W. 393; 3 Pom. Eq. Jur. 400; Kearney v. Smith, 3 Yerg. 127, 24 Am. Dec. 550; Stone v. Moody, 6 Yerg. 31; Rice v. Railroad Bank, 7 Humph. 42; Schwab v. Mount, 4 Coldw. 62; Rowland v. Jones, 2 Heisk. 323; Hickerson v. Raiguel, 2 Heisk. 333; Turley v. Taylor, 6 Baxt. 377; Smith, Fr. § 224; Pratt v. Northam, 5 Mason, 95, Fed. Cas. No. 11,376; Capital Bank v. Rutherford, 70 Ga. 57; Dunn v. Miller, 96 Mo. 324, 9 S. W. 640; Northern P. R. Co. v. Barlow, 20 N. D. 197, 126 N. W. 233, Ann. Cas. 1912C, 763; Keens v. Robertson, 46 Neb. 837, 65 N. W. 897; McClure v. Sheek, 68 Tex. 426, 4 S. W. 552; Wells v. Jackson Iron Mfg. Co. 48 N. H. 526; Heywood v. Wingate, 14 N. H. 73; Goodrich v. Eastern R. Co. 38 N. H. 395; Richardson v. Huggins, 23 N. H. 119; Gregory v. Pierce, 4 Met. 478; Bellows v. Stone, 14 N. H. 175; Becker v. Lamont, 13 How. Pr. 23; Furnival v. Bogle, 4 Russ.

Ch. 149, 6 L. J. Ch. 91, 28 Revised Rep. 34; Porter v. Holt, 73 Tex. 447, 11 S. W. 494; Magnolia Metal Co. v. Pound, 60 App. Div. 318, 70 N. Y. Supp. 230; Noriega v. Knight, 20 Cal. 173; Brown v. Post, 1 Hun, 303; Hannah v. Chase, 4 N. D. 351, 50 Am. St. Rep. 656, 61 N. W. 18; Brown v. Comonow, 17 N. D. 84, 114 N. W. 728; Dever v. Cornwell, 10 N. D. 123, 86 N. W. 227; Conrad v. Adler, 13 N. D. 199, 100 N. W. 722; Young v. Engdahl, 18 N. D. 166, 119 N. W. 169; Re Olmstead, 11 N. D. 306, 91 N. W. 943; Lowenthal's Case, 61 Cal. 122; Gilbreath v. Teufel, 15 N. D. 152, 107 N. W. 49; Williams v. Fairmount School Dist. 21 N. D. 198, 129 N. W. 1027; Skjelbred v. Shafer, 15 N. D. 539, 125 Am. St. Rep. 614, 108 N. W. 487; Freeman v. Wood, 11 N. D. 1, 88 N. W. 721; Bruegger v. Cartier, 20 N. D. 72, 126 N. W. 491; Pearce v. Chastain, 3 Ga. 226, 46 Am. Dec. 423; Emerson v. Udall, 13 Vt. 477, 37 Am. Dec. 604; De Louis v. Meek, 2 G. Greene, 55, 50 Am. Dec. 491; Lazarus v. McGuirk, 42 La. Ann. 194, 8 So. 253; Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 3 L. ed. 362; Wells, Res Adjudicata, § 499; Pearce v. Olney, 20 Conn. 544; Wierich v. De Zoya, 7 Ill. 385; Kent v. Ricards, 3 Md. Ch. 392; Smith v. Lowry, 1 Johns. Ch. 320; De Louis v. Meek, 2 G. Greene, 55, 50 Am. Dec. 491; Pacific R. Co. v. Missouri P. R. Co. 111 U. S. 512, 28 L. ed. 501, 4 Sup. Ct. Rep. 583; 3 Pom. Eq. Jur. 3d ed. 1052, pp. 2031, 2032; 23 Cyc. 1024, 1025; Balch v. Beach, 119 Wis. 77, 95 N. W. 132; Stowell v. Eldred, 26 Wis. 504; Barber v. Rukeyser, 39 Wis. 590; Hiles v. Mosher, 44 Wis. 601; Johnson v. Coleman, 23 Wis. 452, 99 Am. Dec. 193; Crowns v. Forest Land Co. 102 Wis. 97, 78 N. W. 433; Boring v. Ott, 138 Wis. 260, 19 L.R.A.(N.S.) 1080, 119 N. W. 865; Guild v. Phillips, 44 Fed. 461; Currier v. Esty, 110 Mass. 536.

The *cestui que trust* must, if he asks the interposition of a chancellor to assist him, do equity by reimbursing the trustee in his outlay, unless it be in a case of manifest fraud intended and attempted to be perpetrated. Home Invest. Co. v. Strange, — Tex. Civ. App. —, 152 S. W. 510.

Reimbursement must be made on the principle that he who asks equity must do equity. McKenzie v. Boynton, 19 N. D. 531, 125 N. W. 1059.

The appellant's proposed amendments to the complaint should have

been allowed. Faxon v. Ball, 67 Hun, 649, 21 N. Y. Supp. 737; Sawyer v. Bennett, 63 Hun, 631, 18 N. Y. Supp. 24; Powers v. Hughes, 7 Jones & S. 482; Hayes v. Davidson, 33 Hun, 446; Hayes v. St. Mary's Lodging House, 89 Hun, 27, 34 N. Y. Supp. 996; 3 Enc. Pl. & Pr. 529; Halloran v. Holmes, 13 N. D. 411, 101 N. W. 310; Bigelow v. Draper, 6 N. D. 152, 69 N. W. 570; Washburn v. Winslow, 16 Minn. 33, Gil. 19; Catlin v. Gunter, 11 N. Y. 368, 62 Am. Dec. 113; North Star Boot & Shoe Co. v. Stebbins, 3 S. D. 540, 54 N. W. 593; 1 Enc. Pl. & Pr. 515, 516, 556; Maddox v. Thorn, 8 C. C. A. 574, 23 U. S. App. 189, 60 Fed. 217; State ex rel. Morgan v. Smith, 95 N. C. 396; Lake Erie & W. R. Co. v. Boswell, 137 Ind. 336, 36 N. E. 1103; Meyer v. State, 125 Ind. 335, 25 N. E. 351; Kelsey v. Chicago & N. W. R. Co. 1 S. D. 80, 45 N. W. 204; J. I. Case Threshing Mach. Co. v. Eichinger, 15 S. D. 530, 91 N. W. 82; Willis v. De Witt, 3 S. D. 281, 52 N. W. 1090.

There is a wide difference between facts not occurring until after the action is commenced, and matters existing but not discovered until after commencement of action. Comp. Laws, § 4938, amended by chap. 54, Laws 1897; Lustig v. New York, L. E. & W. R. Co. 48 N. Y. S. R. 916, 20 N. Y. Supp. 477; Coby v. Ibert, 6 Misc. 16, 25 N. Y. Supp. 998; 31 Cyc. 392; Harkins v. Edwards, 1 Iowa, 296; Bebb v. Preston, 3 Iowa, 325; Kiene v. Ruff, 1 Iowa, 482; Bunn v. Pritchard, 6 Iowa, 56; Arbuckle v. Bowman, 6 Iowa, 70; Logan v. Tibbott, 4 G. Greene, 389; Wilson v. Johnson, 1 G. Greene, 147; Stevens v. Campbell, 6 Iowa, 538; McDougald v. Hulet, 132 Cal. 154, 64 Pac. 278; Home Ins. Co. v. Overturf, 35 Ind. App. 361, 74 N. E. 47; Pangborn v. Continental Ins. Co. 67 Mich. 683, 35 N. W. 814; Case v. Carroll, 35 N. Y. 385.

The effect of the deed from the county to the Hackney-Boynton Land Company is not here involved, according to the controlling facts established. Rev. Codes, § 2494, subds. 6, 10, 12, § 2578; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23.

If proper deeds cannot be secured and delivered to the proper parties, then a personal decree should be entered against the attorney for the value of the property. Home Invest. Co. v. Strange, — Tex. Civ. App. —, 152 S. W. 510; Prondzinski v. Garbutt, 10 N. D. 309, 86 N. W. 969; Hill, Trustees, 522; Perry, Tr. & Trustees, § 847; Hardin

v. Eames, 5 Ill. App. 153; Loomis v. Satterthwaite, — Tex. Civ. App. —, 25 S. W. 68; Boothe v. Fiest, 80 Tex. 141, 15 S. W. 799; Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391; Rogers v. Barnes, 169 Mass. 179, 38 L.R.A. 145, 47 N. E. 602; Mixon v. Miles, — Tex. Civ. App. —, 46 S. W. 105; Ringgold v. Ringgold, 1 Harr. & G. 11, 18 Am. Dec. 250; Chamberlain v. O'Brien, 46 Minn. 80, 48 N. W. 447; Cushman v. Bonfield, 139 Ill. 219, 28 N. E. 937; Haxton v. McClaren, 132 Ind. 235, 31 N. E. 48.

*Geo. W. Newlon, R. N. Stevens,* and *H. C. Lynn,* for respondent.

Whenever a demand is presented under the circumstances disclosed in this case, the right of recovery is tested from an inquiry as to whether the demand is connected with an illegal transaction in such way as that the plaintiff requires any aid from such transaction to establish his case. Roby v. West, 4 N. H. 285, 17 Am. Dec. 423; Pike v. King, 16 Iowa, 49; Scott v. Duffy, 14 Pa. 18; Holt v. Green, 73 Pa. 198, 13 Am. Rep. 737; Swan v. Scott, 11 Serg. & R. 164.

The rule is settled that where the only road to a recovery is by way of an illegal contract, the court will render no assistance. Western U. Teleg. Co. v. Yopst, 118 Ind. 248, 3 L.R.A. 224, 20 N. E. 222; Martin v. Hodge, 47 Ark. 378, 58 Am. Rep. 763, 1 S. W. 694; Howell v. Fountain, 3 Ga. 176, 46 Am. Dec. 415; Gregg v. Wyman, 4 Cush. 322; Fowler v. Scully, 72 Pa. 456, 13 Am. Rep. 699; Fitzgerald v. Grand Trunk R. Co. 63 Vt. 169, 13 L.R.A. 70, 3 Inters. Com. Rep. 633, 22 Atl. 76; De Witt v. Lander, 72 Wis. 120, 39 N. W. 349; Eberman v. Reitzel, 1 Watts & S. 181; Buck v. Albee, 26 Vt. 184, 62 Am. Dec. 564; Keith v. Fountain, 3 Tex. Civ. App. 391, 22 S. W. 191.

Mr. Lynn is in no way estopped. He was not at any time employed by Emmons County, or by any officer of such county at the time the record titles to said lands were being perfected. He took no part in the Hackney-Boynton sales or purchases. Painter v. J. B. Painter Co. 133 Cal. 130, 65 Pac. 311; Eldred v. White, 102 Cal. 604, 36 Pac. 944; Collins v. Scott, 100 Cal. 446, 34 Pac. 1085; Steen v. March, 132 Cal. 616, 64 Pac. 994; Hanley v. Hanley, 114 Cal. 690, 46 Pac. 736; Champion v. Woods, 79 Cal. 17, 12 Am. St. Rep. 126, 21 Pac. 534.

Equity will not grant relief from the judgment obtained by fraud, unless the parties seeking such relief have been free from negligence.

People ex rel. Schwartz v. Temple, 103 Cal. 447, 37 Pac. 414, 416; Young v. Fink, 119 Cal. 107, 50 Pac. 1060; Greene v. Greene, 2 Gray, 361, 61 Am. Dec. 454.

BURKE, J. This action with the six other cases closely allied, involves the title to some 3,200 acres of land situated in Emmons county, North Dakota. The facts in the case are largely in dispute, and the abstract covers something like 1,500 pages of printed matter; appellant's brief contains nearly 400 pages, while respondent's brief is but a few pages shorter. The case comes to us for trial *de novo,* which means that this court must pass upon all the disputed questions of fact, and then declare the law governing. In order to keep the opinion within reasonable bounds, many of the findings of this court will be merely announced, without quoting at length from the evidence; while such of the minor disputes of facts as we consider immaterial will not be noticed. The more important facts will be treated at length, and extracts from the evidence set forth in the opinion. All of the questions, however, have received careful attention by the court sitting as a whole, and each dispute has been settled by a majority vote of the members of this court.

The undisputed facts are that prior to the year 1897 some of the lands of Emmons county had been abandoned by the owners, who refused to pay taxes upon the same. The twenty quarter-sections involved in this litigation were in this class. Those twenty tracts were owned by nonresidents scattered over the United States, and all of the land was unoccupied and uncultivated. Up to that time, tax titles were considered of little value, and were frequently set aside by the courts.

Chapter 67 of the Laws of 1897, known as the Wood law, permitted the counties to proceed against real property for back taxes in a regular court proceeding, and provided for the issuance of execution and a sale of the land the same as though the judgment had been based upon a money demand. The county commissioners of Emmons county proceeded promptly under this law, and on the 4th day of October, 1897, the lands were sold and bid in by the county. The validity of those proceedings was attacked, and eventually the question reached this court, where, on the 27th day of October, 1900, in the case of Emmons County v. First Nat. Bank, 9 N. D. 583, 84 N. W. 379, and twenty-six other

27 N. D.—26.

cases, the proceedings were in all things upheld. Thereafter everybody in Emmons county believed the county to be the owner absolutely of those lands. Although some twenty-seven actions had been taken to the supreme court, none of the lands mentioned in the case at bar were involved.

In 1901 the Hackney-Boynton Land Company purchased from the Northern Pacific Railway Company all of its North Dakota lands east of the Missouri river, at the price of $1.05 per acre. Some 200,-000 acres of this land was situated in Emmons county alone, some adjoining the twenty tracts involved in the present litigation. The company was extensively engaged in selling those lands to settlers, and had established a local agency in Emmons county.

In the same year the county of Emmons had begun the erection of a new courthouse, and was in pressing need of money to make payments upon the building, so made efforts to sell the lands acquired by them under the Wood law to provide a revenue for this purpose.

George W. Lynn, the defendant, had settled in Emmons county in 1886, was admitted to the bar of North Dakota in 1890, and thereafter engaged in the active practice of his profession in said county. From 1892 to 1897; from January 1st, 1901, to January 1st, 1905; from January, 1907, to January 1909; and from January 1st, 1913, to the present time,—he was and is the duly elected, qualified, and acting state's attorney of Emmons county. He had shared the general opinion of the county officials of that county that Emmons county owned this land, and had so advised prospective purchasers. He had prepared a form of deed which was used in conveying one quarter-section of said land to a man named Naaden. He had also advised the county commissioners that they had a perfect right to sell this land by warranty deed, and had himself bought from the county the buildings upon one of the tracts.

The county commissioners, among other things, advertised the lands for sale in various newspapers, sent circular letters offering the lands for sale to the various land companies who might be interested in their purchase. One of those circular letters was sent to the Hackney-Boynton Land Company. Finally the lands were unofficially advertised to be sold to the highest bidder for cash; sealed bids to be received up to and including November 4, 1901. Hackney-Boynton Land Com-

pany made a bid for all of the lands owned by the county, at the price of $1.32 per acre. There is considerable dispute as to the reception accorded this bid, but in many respects it is immaterial. Eventually the county sold and the land company bought the tracts involved in this litigation at an agreed price, and the county executed its deed covering said tracts. There is also much dispute as to the connection of Mr. Lynn with this sale, and this will be treated later in the opinion. It is not disputed that he was at the time state's attorney, and the deed used was prepared from a form drawn up by him. Upon receiving the deeds for the 6,761 acres of land aforesaid, the land company, in March, 1902, instituted actions against the original fee owners to quiet title, and before serving the same they wrote to Mr. Lynn, asking him to do a little work for them, and inclosing a list of questions for him to answer concerning the proceedings taken by the county in perfecting title in itself. It is contended by plaintiff that Mr. Lynn was thus employed as an attorney in such litigation, but this is stoutly denied by defendant, and will be treated at length later in the opinion. In any event, defendant Lynn answered the questions, forwarded the same to the land company with a bill for $10 for his services, which bill has never been paid. The actions proceeded to judgment, and a decree was entered quieting title in the land company to all of the lands covered by this litigation, and the land company paid the taxes from that time to date, listed the same, sold the hay thereon, and showed the same to prospective purchasers the same as its other lands.

The Wood law resulted in much litigation, and reached this court in various forms in: Wells County v. McHenry, 7 N. D. 246, 74 N. W. 241; Purcell v. Farm Land Co. 13 N. D. 327, 100 N. W. 700; Cruser v. Williams, 13 N. D. 284, 100 N. W. 721; Darling v. Purcell, 13 N. D. 288, 100 N. W. 726. In the case of Cruser v. Williams, supra, which involved lands in Emmons county sold under the Wood law, but not involved in the present litigation, it was held that the county had not given the proper notice of redemption to the fee owners, and that all sales made by said county were subject to the right of the owner to redeem therefrom, and the purchasers had only a lien upon the property. This decision was filed July 12, 1904, and was a surprise to everybody interested in the question, and especially to the purchasers of the lands who had so long relied upon the case of Emmons County v. First

Nat. Bank, 9 N. D. 583, 84 N. W. 379. Mr. Lynn was one of the attorneys of record in the Cruser Case, and had argued against the decision rendered therein. His term as state's attorney expired January 1, 1905, and shortly thereafter he conceived the idea of obtaining quitclaim deeds from the original owners, and instituting actions to redeem from the Wood law sales. There is in evidence a letter written by Mr. Lynn to a Mr. Dunton, dated April 7, 1905, in which he says, among other things: "The land of this county is worth from $5 to $10 an acre, and on these titles the taxes will average about $3 per acre, that is including the interest and everything that will have to be paid in case of redemption. . . . In case I am right, all the tax titles in this county will have to go and a redemption be allowed. Now, of the original eighty tracts that went to tax title there is about fifteen of them been fixed up. . . . In making my list of same I have fifty one-quarter sections. Of these I have secured only eleven, and have all fee owners located except three, and have had correspondence with all except five, which refused to answer my letters. The eleven that I have secured cost me on an average of $54.09 per quarter-section. Of course, I have got some pretty cheap, by reason of the fact I was acquainted with the parties. Of these fee owners on all the tracts, about half live east of Chicago and the others west. Of those living east the fee title could be handled best from the east, and those west could be handled best from here. In getting this title that I have got, have done the same all by mail, and expect to get yet about as many more titles, as I have been working on the same only from January 1st. Now, the amount of money to be paid in this matter depends upon the amount of energy and ingenuity that is used in the purchase of the same. In order to keep down the cost, again it depends on the manner that the tax titles are gone after, as to how cheap a settlement can be made, and if one tax title is knocked out in each county it will lessen the cost of all others very materially. I take it from what you say that you want me to look up the tax title and approve the same as to the proceedings had under the tax law. . . . I do not have any definite way in which we could engage in the same together; that is, I do not have in mind any way in which we would divide the spoils that would be fair to both. If you have such an arrangement in your mind, would be pleased to have

you make me a proposition, as if I do this, would want to know that I could so arrange matters here that I could get away.

(Signed) George W. Lynn."

As stated in the above letter, Mr. Lynn had already obtained quitclaim deeds from several of the former fee holders. The method pursued by Mr. Lynn in obtaining those deeds is important, and forms one of the principal disputes in this action. The land company insists that Mr. Lynn's conduct in those transactions, taken together with the fact that he was state's attorney for Emmons county in 1901, and their own attorney in 1902, makes him an involuntary trustee of the title for their benefit. This subject will be discussed later.

After quitclaim deeds were obtained for the various tracts, on February 24, 1908, Lynn began four suits to quiet title to ten of the tracts above enumerated. The necessity for four suits arose from the fact that the Hackney-Boynton Land Company had divided its holdings into four parts, Mr. Hackney, Mr. Boynton, Mr. Hoerr, and Mr. Patterson each receiving his share of the lands owned by the original company. The summons and complaint in each case were duly served, and were referred to Messrs, Cochrane & Philbrick, attorneys, at Bismarck, North Dakota, for attention. About the same time, or shortly prior thereto, Lynn applied to the district court, and secured orders setting aside the decree already entered quieting title in the Hackney-Boynton Land Company. When the cases of Lynn against the four defendants were reached for trial, a stipulation was made between the attorneys to the effect that Lynn was the owner of the ten tracts of land, unless he had been devested of his title by the proceedings taken by Emmons county under the Wood law. No other defense was interposed by the defendants, and the trial court made findings of fact to the effect that Lynn was such owner of the tracts, subject only to the lien of the taxes acquired by the land company from Emmons county. No appeal was taken from this judgment, and the time for appeal has now long since expired. The validity of this second decree, which quieted the title of the lands in Lynn, has an important bearing upon the results to be reached in this suit, and will be treated at length later in the opinion.

In 1910 the present actions were instituted in equity, setting forth in full all the transactions mentioned heretofore, and asking that the

judgments quieting title in Lynn be vacated and set aside; that Lynn be enjoined from entering further judgments upon the stipulation made with Cochrane & Philbrick; that the order quieting title in the land company be reinstated; and for such other and further equitable relief as may to the court seem just. Later and during the course of the trial an attempt was made to amend this complaint to show that Mr. Lynn had at one time acted as attorney for the land company, and had thus secured the information which enabled him to obtain the quitclaim deeds to himself, and that the defendant Lynn had obtained the quitclaim deeds aforesaid by representing to the person who executed the same that the quitclaim deed would be used merely to remove a cloud from the record title. To each of those complaints an answer was interposed by Mr. Lynn, setting up the stipulations with Cochrane & Philbrick, the invalidity of the proceedings under the Wood law, a denial that he was attorney for the land company, and setting up the former adjudication in his favor as a bar to the present action, and that the plaintiff's title was defective through fraud in obtaining the warranty deed from Emmons county. The trial resulted in a judgment for the defendant in each of the actions, and this appeal followed.

(1) The first question relates to the right of plaintiff to maintain this action. The Patterson Land Company is one of the grantees of Hackney-Boynton Land Company, who received its deed from Emmons county as aforesaid.

The plaintiff must recover upon the strength of its own title, and respondent vigorously insists that such title has not been shown. While it is true that this court in Cruser v. Williams, 13 N. D. 284, 100 N. W. 721, held that no notice of redemption had been given by Emmons county to the various fee owners, yet we think this defense available only to such fee owners. In view of the holding in the fourth paragraph of this opinion, it is apparent that defendant is estopped to assert title to these tracts, and it necessarily follows that he is estopped to attack plaintiff's title, which is fair upon its face and good against all the world, including Mr. Lynn, but excepting only the former fee owners. If Mr. Lynn could rightfully trace his title from those fee owners, he would be in a position to interpose objections which would destroy the prima facie title of the plaintiff, but he is not in such position. The following authorities sustain this doctrine: Union P. R. Co. v. Durant,

95 U. S. 576, 24 L. ed. 391, from which we quote: "The position assumed by the trustee in this case is not unlike that of one who, having deprived the owner of the possession of his property, when called to account civilly or criminally, should insist that the owner's title was fatally tainted with fraud, and that hence the offender had the right to 'take and carry away,' and keep and enjoy the property himself with impunity." See also Fidler v. Norton, 4 Dak. 258, 30 N. W. 128, 32 N. W. 57; Ingram v. Mitchell, 30 Ga. 547; Miltenberger v. Cooke, 18 Wall. 421, 21 L. ed. 864; Phalen v. Clark, 19 Conn. 421, 50 Am. Dec. 253; White v. Franklin Bank, 22 Pick. 181; Webb v. Fulchire, 25 N. C. (3 Ired. L.) 485, 40 Am. Dec. 419; Duval v. Wellman, 124 N. Y. 156, 26 N. E. 343,—the gist of these decisions being that an agent or attorney is estopped to set up any imperfection in the title of the person for whom he holds in trust.

We thus reach the conclusion that plaintiff's title, fair upon its face, and not subject to attack from Lynn, is sufficient to sustain this action.

(2) It was argued in the trial below, and also in this court, that the evidence discloses gross fraud upon the county of Emmons in the sale to the land company of the tract at less than the amount of the taxes held against them. We will discuss this but briefly to say that the evidence fails to substantiate this accusation. The county was in urgent need of money. The county commissioners had advertised the lands for sale, and had written letters to various land companies in an effort to obtain a bid for the same. Mr. Boynton went to Linton to make an investigation, and while there he and their local agent drove over the lands and made inquiries regarding the titles. When the bids were opened it was found that there was a conflict therein. Mr. Boynton had bid upon all of the lands of the county, while a Mr. Beiseker had bid upon some 3,000 acres in which he had an interest, and other persons had bid upon individual tracts. It seems to have been the policy of the commissioners to allow the owners of the land to redeem from the tax sale in preference to selling the same to some outsider, and therefore the Hackney-Boynton bid was rejected and the other bidders allowed to take the tracts desired. Mr. Boynton insisted that those persons had taken the cream of the land, and refused to accept the balance pro rata. It is undisputed that he went to his hotel, and seemed to lose interest in the lands. The county commissioners, after waiting in vain

for his return, sent for him and attempted to secure a bid for the remainder of the lands. Mr. Boynton finally made such a bid, and it was accepted. It is undisputed that the land company had just purchased something over 200,000 acres of land in Emmons county from the Northern Pacific Railway Company with a perfect title, at the sum of $1.05 per acre, and that most of such land was still unsold. The evidence discloses considerable reluctance upon the part of Mr. Boynton to pay even $1.32 an acre for the Emmons county lands, upon the title which they had to offer, and we consider it too improbable for serious consideration that any of the officials of Emmons county were bribed, directly or indirectly, in the transaction.

(3) The next consideration will be given to the question of the nature of the decree obtained by the land company quieting title to the said tracts. It is urged by respondent that the summons in those suits failed to show whether or not the complaints were filed with the clerk of the district court, and that therefore the proceedings were utterly void. This question can only be raised by someone having an interest in the lands, and under the holding of this opinion Mr. Lynn is not such a person.

(4) We now reach the question of the title of defendant. It is the contention of appellant that Lynn is an involuntary trustee of the title for its benefit, for the reason that he acted as state's attorney for Emmons county in the proceedings that led up to the issuance of the deed of Emmons county to the Hackney-Boynton Land Company. In this we think appellant is correct. It appears from the evidence that Mr. Lynn has acted as state's attorney of Emmons county at various times since 1892, and is now acting as such state's attorney for the twelfth year. He received a salary during all of this time, and was acting as such state's attorney in the year 1901, when the land was sold by Emmons county to the Hackney-Boynton Land Company. As such it was his duty to advise the other county officials upon matters relating to the legal affairs of the county, and such advice was sought and given relative to this very transaction, as appears from the testimony of several of the county officials. Mr. Lynn advised the county commissioners that they had legal right to sell these lands, and prepared a form of warranty deed therefor; he drew up for their use the form of deed actually used in this transaction, and he personally superintended the

drawing up of the resolutions passed by the county board authorizing the deed. If a private person had employed Mr. Lynn under the same conditions, we do not apprehend that there would be much difficulty in reaching the conclusion that he might not acquire any title hostile to such client. The deed which Mr. Lynn helped to prepare for the county to issue is the very deed now being attacked by him. If the attack is successful, Emmons county will have to respond to the Hackney-Boynton Land Company in a sum considerably in excess of $10,000. We think it plain that the state's attorney of the county owes to that county a duty to refrain from buying antagonistic titles, or instituting proceedings that will result in costs to his client. For this reason we hold that Mr. Lynn could acquire no title hostile to Emmons county, and such title as he acquired inured to the benefit of Emmons county and its grantee. The rule is stated at 4 Cyc. 958, as follows: "An attorney can in no case, without the client's consent, buy and hold otherwise than in trust any adverse title of interest touching the thing to which his employment relates." And at 3 Am. & Eng. Enc. Law, 2d ed. 344: "If he [the attorney], after being employed to draw a deed or examine the title to certain lands, buys an outstanding title to the land, adverse to that of his client, . . . he buys it for his client, and the latter may elect to take it on reimbursing the attorney. An innocent purchaser from the client is entitled to all the equities existing in favor of his assignor." Yerkes v. Crum, 2 N. D. 72, 49 N. W. 422, from which we quote: "Such transactions are not held to be void upon the ground of intentional fraud or proven bad faith, but because the relations of the parties are such that the one may make use of his position of power and influence over the other, or of his superior knowledge derived while in the employment of the other, to take an unfair advantage of him." Re Freerks, 11 N. D. 120, 90 N. W. 265; Henry v. Raiman, 25 Pa. 354, 64 Am. Dec. 703; Baker v. Humphrey, 101 U. S. 494, 25 L. ed. 1065; Sanford v. Flint, 108 Minn. 399, 122 N. W. 315; Downard v. Hadley, 116 Ind. 131, 18 N. E. 457; Galbraith v. Elder, 8 Watts, 81; Ainsworth v. Harding, 22 Idaho, 645, 128 Pac. 92.

The fact that the client in this case was the county, and not an individual, in no manner lessens the duty of the attorney nor changes his position as trustee.

Actual fraud need not be shown, nor any intentional violation of the trust. It may be conceded that Mr. Lynn believed he had a right to buy those outstanding titles after his term as state's attorney had expired; the law in its wisdom says he must not, and if he does, it will conclusively presume that he acted for the county.

(5) We next approach the question of the employment of Mr. Lynn by the Hackney-Boynton Land Company. The facts relative to this matter are not seriously in dispute, but the legal effects of the facts are differently construed by the parties. As already mentioned, the Hackney-Boynton Land Company in March, 1902, instituted suits to quiet title to the lands they had bought from Emmons county, and just prior thereto they wrote to Mr. Lynn the following letter:

March 3, 1902.

G. W. Lynn, State's Attorney of Emmons County,

Linton, N. D.

Dear sir:—

We would like to have you do a little work for us at the county office at Linton in connection with the tax title lands which we purchased from Emmons county sometime ago. We inclose herewith the requirements of our attorneys. We do not want to go to the expense of sending an attorney to Linton, and thought we could get you to do the work instead. Will you look over the records carefully, and report each item as fully as possible and as soon as possible, sending in your bill?

Yours truly,

(Signed) Hackney-Boynton Land Company.

In reply to this letter, Mr. Lynn wrote as follows:

March 12, 1902.

Hackney-Boynton Land Company,

St. Paul, Minn.

Kind sirs:—

Replying to your of the 3d, will say in answer to the first question of the schedule herein returned, that the certificates do not show any compliance with section 12 of chapter 67, Laws of 1897, as regards the posting and publishing of notices, but the same was done, and the

sheriff, Peter Shier, will so state; also the then treasurer, H. W. Allen, who has personal knowledge of the facts. In answer to question three will say that the delinquent list is on file in the clerk of court's office, the same being in book form, and bears filing mark of August 19, 1897. Have examined the certificates in each tract, and they are all alike, being made after the form in § 14, chapter 67, Laws of 1897; fees for examination $10.                    Yours,

(Signed) G. W. Lynn.

Defendant states that he does not consider that he was employed as an attorney, and that was undoubtedly his honest conviction. However, when it is remembered that even this short employment gave Lynn notice of Hackney-Boynton's intention to bring the suit, the name of the defendants who were also the former fee holders, and that the affidavit of publication must disclose their residences, if known, it is apparent that very much of the information which he acquired was also usable by him in obtaining the quitclaim deeds upon which his claim to title rests. When it is remembered also that this letter was dated March 2, 1902, before any of the quitclaim deeds had been obtained by Lynn, it shows a connection of more than passing importance. While these circumstances alone might not be enough to create a trust in favor of the land company, yet, taken in connection with the duty he owed to Emmons county to do nothing to injure his client, we think it a circumstance corroborating the holding in the preceding paragraph.

(6) The next question for discussion is the effect of the suits brought by Lynn, and the stipulation of facts entered into by Cochrane & Philbrick upon their behalf. It is conceded that such stipulation admits that Mr. Lynn was the owner of the lands unless he had been devested by the proceedings under the Wood law. While courts are loathe to disturb stipulations of the parties, yet circumstances can and often do arise where relief is granted from an improvident stipulation. We think this is a case for the exercise of this clemency. It is true that the land company knew of the employment by them of Mr. Lynn, and of the fact that he was state's attorney of Emmons county, but it did not know of the facts relative to his acquisition of the land. Had they known all of the facts, which will be discussed in the next paragraph of this opinion, they would probably have insisted upon a different stipu-

lation. That Lynn was not the owner of the lands at the time the stipulation was made is abundantly shown by the evidence. Several of the quitclaim deeds were obtained from persons who had already parted with what title they had, to other persons. One of the deeds had been altered, slightly, perhaps, to show a different grantee than intended by the grantor. Two of the titles were based upon void fore-closures, one of which has been since abandoned by Mr. Lynn. And many of the conveyances were obtained for a mere nominal considera-tion, upon representations that the deeds were intended to clear the record title, which will be treated in the next paragraph. Under those facts the stipulation that Mr. Lynn was the owner of the land unless he had been devested by the proceedings under the Wood law was an imposition upon the trial court. Moreover, the trial court had already entered a decree quieting title to those very lands in favor of the land company, and, Mr. Lynn not being in a position to make any attack upon that decree, the same was binding upon all parties to the second suits.

(7) The seventh paragraph will be devoted to treating the correspond-ence between Mr. Lynn and the grantors in the various quitclaim deeds. We are obliged to treat evidence given in all of the cases, because parts of the land obtained by Lynn from a single grantor have passed to different members of the firm of Hackney-Boynton Land Company upon the division of their assets. In the Patterson Case are the following lands: N½ and SE¼, 35–135–76, purchased from Elvidge for $50; SW¼ 13–135–78, for which he paid Dr. Goodhue $15; S½ of 9–135–76 for which he paid Mellon $25; NW¼ 15–136–75 pur-chased from W. E. Wright for $31.25; SW¼ of 12–130–79 obtained for $50 upon foreclosure proceedings against one Haka; S½ SW¼ of 21 and NE¼ NW¼ and lot 2, 28–130–79 obtained upon mortgage given by Parkhurst; SE¼ 27–135–77 for which $100 was paid to Joseph Tape; E½ 15–136–75 for which he paid Wright $62.50; SW¼ 19–136–77 for which $250 was paid Collins; lots 2, 3, and 4 section 2, 136–76 bought of Gutjahr. In this connection it must be remembered that those original owners had long since abandoned the land and had paid no taxes thereon; that they made no claim to ownership in the land, and all of the conveyances were by quitclaim deeds, and not by war-ranty deeds; that while Hackney-Boynton Land Company had made

no extensive improvements upon the land, nor entered into actual physical possession thereof, they had listed them with its local agency, and was showing them to prospective purchasers, and selling the hay thereon, and had quieted title thereon in the courts. It must also be remembered in this connection, the letter which Mr. Lynn had written to Dunton, and given earlier in this opinion, which shows his conception of the transactions, and wherein he speaks of a plan "in which he would divide the spoils." Taking up the tracts individually, we find Lynn's first letter to Elvidge, dated January 27, 1905, and it reads as follows: "You will perhaps remember that back in the year 1885 you purchased some land in this county, and that for a long time you haven't paid any taxes upon the same. This land has been sold for taxes several times, and in 1897 the land was sold under tax judgments for past two years, and the same was bid in by our county. The county in the year 1899 sold the same by deed of warranty to a certain land company, who quieted their title by an action in our courts in the year 1902. Now, I desire to make a purchase of this land. While our courts of final resort have upheld the title of the land company acquired in this way, and their title is probably good, yet I desire to get your quitclaim to the said lands. I do not consider that you have much of a title to sell, and cannot give you much for the same. However, I have prepared a quitclaim deed, and inclose the same herewith, and if you will execute the same before a notary public, and deposit the same in your bank for collection, and notify me of the name of the bank, I will send you $25 to the bank designated. This will compensate you for your trouble, and it is all that I can afford to give. Of course, you understand that in giving this kind of a deed you do not in any wise bind or obligate yourself in the least, simply releasing any title you may have. Please attend to this at once, as I desire to get the same closed up as soon as possible. (Signed) George W. Lynn."

In reply he received the following letter, dated February 17, 1905: "Yours of January 27, 1905, referring to lands bought by me in 1885 in Emmons county, received and contents noted. Have decided to fill out and sign quitclaim deed if you will send draft for $50 to Avalon Bank, Avalon, Alleghany county, Pennsylvania, with instructions to bank to transfer the amount to me in exchange for the signed paper referred to. Please advise me of your decision, and if satisfactory will

have the paper acknowledged and ready for return to you. (Signed) Frank H. Elvidge." This proposition was accepted by Lynn. In February, 1905, Lynn wrote to Mellon as follows: "About twenty years ago you bought and was the owner of a half-section of land in this county, but later you failed to pay the taxes on the same, and the same was sold for taxes under a tax judgment, and the same became the property of this county in 1897, and period of redemption expired in the year 1899. In the year 1902 the county sold the same to a land company by warranty deed. Said land company quieted their title to the same in the year 1902. Of course, your former title stands as a cloud on the same. I desire to know what you will take for a quitclaim of the same? Let me know at your earliest convenience. (Signed) George W. Lynn." In his letter to Wright he says: "About twenty-four years ago you bought from the Northern Pacific Railroad a section of land in this county, and you abandoned the same, and did not pay taxes on the same, and it has passed under tax title years ago. Also the title has been quieted as against your claim. Now there is no doubt but that you have lost all hold on the land, and your title has been devested, but I desire to know if you will execute a quitclaim deed to the premises for a nominal amount of $25? . . . (Signed) George W. Lynn." To Mrs. Bussy he wrote in part: "I could not give over a nominal sum for it, for it is wanted merely to clear up a record title, as the same has long ago passed to a perfect tax title." To one Horrigan he wrote relative to the Collins land, as follows: "At one time one J. N. Collins was the owner of a parcel of land in this county, and later abandoned the same, and it is now in the hands of other parties, but the records still stand clouded by the former record of title. . . . Now I can afford to give $25 to get his release or quitclaim of any rights he may have in the land." These samples show the general nature of the correspondence had with the former owners of said tracts. The depositions of those various grantors which were taken during the course of the trial disclose that they understood they were giving the quitclaim deeds to clear up the record title, and did not suspect that Mr. Lynn would assert ownership based upon the quitclaim deeds which they had executed to him.

It is apparent that Mr. Lynn was endeavoring to obtain what he considered a perfect title to the land, subject only to a lien for taxes

under the Wood law, and in so doing he concealed from the grantors his true purpose and intention. While those grantors are not parties to this suit, and make no complaint, still we think Mr. Lynn's conduct should be considered in determining whether he was in law an involuntary trustee for the benefit of Emmons county. As we have already reached the conclusion that he was debarred from obtaining title hostile to that held by Emmons county, this paragraph can be considered merely as strengthening the conclusion already announced, that Lynn was estopped from acquiring or asserting an interest in the premises adverse to the county of Emmons or its grantees. Yerkes v. Crum, 2 N. D. 72, 49 N. W. 422, and cases therein cited; Re Freerks, 11 N. D. 120, 90 N. W. 265; Gates v. Kelley, 15 N. D. 639, 110 N. W. 770; Reid v. Stanley, 6 Watts & S. 369; Doster v. Scully, 27 Fed. 782; Smith v. Brotherline, 62 Pa. 461; Sutherland v. Reeve, 41 Ill. App. 295; Gibbons v. Hoag, 95 Ill. 45; Davis v. Kline, 96 Mo. 401, 2 L.R.A. 78, 9 S. W. 724; Larey v. Baker, 86 Ga. 468, 12 S. E. 684; Turley v. Turley, 85 Tenn. 251, 1 S. W. 891; 11 Cyc. 647 and cases cited. Not only was Lynn forbidden under those authorities to acquire a title hostile to Emmons county and its grantees, but he was forbidden under the statutes of the state from making such purchases. See Rev. Codes 1905, §§ 8732–8739, 8744; Gammons v. Johnson, 76 Minn. 76, 78 N. W. 1035; Steere v. Steere, 5 Johns. Ch. 1, 9 Am. Dec. 256.

(8) The foregoing paragraphs show that the defendant, Lynn, is an involuntary trustee for the benefit of Emmons county and its grantees, and the plaintiffs have offered to reimburse him for all moneys expended in obtaining the titles aforesaid. Upon the payment to Mr. Lynn of such amounts, plaintiffs are entitled to receive from Mr. Lynn a transfer of the title which he has acquired therein.

(9) Two of the quarter-sections involved in this litigation were acquired by Mr. Lynn under slightly different circumstances. Instead of obtaining quitclaim deeds from the owners he purchased mortgages given by such former fee owners, and foreclosed thereon. While this title is slightly different, it is no stronger than the others. The Wood law contained the provision that the judgment for taxes should convey the entire title to the land, thus shutting out both the fee owner and all encumbrances.

(10) Another question arising is the correctness of the order of the

trial court in refusing to allow an amendment to the complaint setting up the facts herein stated, relative to Mr. Lynn's having acted as state's attorney, his having acted as attorney for Hackney-Boynton Land Company, and the fact that his deeds were obtained for a nominal consideration and upon alleged misrepresentations. Those allegations were not contained in the original complaint at the time of the commencement of the trial. During the course of the trial the plaintiff asked permission to make the amendment above outlined stating their nature fully. The trial court made no ruling until after the completion of the trial, when the amendments were denied. We have already held it to be the duty of the trial court to rule upon such questions when presented, even in cases tried under the so-called Newman act. At the time the attempt was made to amend the complaint it was shown by affidavit that the new facts sought to be proven had just been discovered. Under those circumstances, and in view of the fact that no prejudice had resulted to defendant because the trial was still in progress and he had ample time within which to meet the issues, the amendments should have been allowed, and they are treated upon this appeal as though the same had been allowed.

From the foregoing it is evident that the order of the trial court herein must be reversed, and a decree entered ordering the defendant Lynn to transfer the lands in controversy to the Patterson Land Company upon their paying to him the several amounts which he has expended therefor, including a reasonable sum to be allowed by the trial court to cover his expenses incident to obtaining the titles aforesaid, and such taxes as he has paid thereon, and any improvements which he may have placed upon the premises; and that upon a failure of defendant to execute such deed, to make and file a decree operating to transfer such title.